721 P.2d 781

STATE of New Mexico, ex rel. DEPARTMENT OF HUMAN SERVICES, Petitioner-Appellee,

v.

Kathy Latham AVINGER, Respondent-Appellant.

No. 8423.

Court of Appeals of New Mexico.

Oct. 17, 1985.

Barbara L. Shapiro and Sarah Curry Smith, Poole, Tinnin & Martin, P.C., Albuquerque, for respondent-appellant.

Richard J. Rubin, General Counsel, Human Services Dept., Ellen Souberman and John Petoskey, Sp. Asst. Attys. Gen., Santa Fe, for petitioner-appellee.

## OPINION

WOOD, Judge.

Proceeding under the Children's Code, NMSA 1978, Sections 32–1–1 to –45 (Repl. Pamp.1981 & Cum.Supp.1985), *see* Section 32–1–1, the children's court found that Avinger's children had been abandoned and neglected. Section 32–1–3(L)(1) and (2). Avinger contends the evidence of abandonment and neglect was not clear and convincing. She also attacks two evidentiary rulings. We do not decide these issues because two jurisdictional issues are dispositive. The jurisdictional issues arise under New Mexico's Child Custody Jurisdiction Act (CCJA), NMSA 1978, Sections 40–10–1 to –24 (Repl.Pamp.1983), and the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. Section 1738A (Cum.

P.P.1985). We discuss: (1) the authority of the children's court to change the custody of the children under the applicable statutes; (2) authority under the facts; and (3) the motion to dismiss the appeal as moot.

CHILDREN'S COURT AUTHORITY UNDER THE STATUTES

The authority of the children's court to change the custody of the children is a jurisdictional issue. *Heckathorn v. Heckathorn,* 77 N.M. 369, 423 P.2d 410 (1967).

Avinger had been awarded custody of her children by a Texas court on July 10, 1984. The children are in New Mexico, having been brought here from Texas, via Missouri, by relatives.

On November 5, 1984, the state, through its Department of Human Services (DHS), obtained custody of the children by an ex parte order of the children's court. The basis for the ex parte order was an allegation of neglect and that custody in DHS was necessary for the protection of the children.

DHS filed a neglect petition on November 6, 1984. Section 32-1-3(L)(1) and (2) defines a neglected child to include abandonment and circumstances amounting to neglect. Thus, the children's court's findings of both abandonment and neglect were within the issues before the court. After a hearing on November 6, 1984, the children's court ordered on December 11, 1984, that DHS have physical and legal custody of the children until an adjudicatory hearing could be held.

An adjudicatory hearing was held, beginning January 4, 1985. The children's court's findings and conclusions were filed February 1, 1985. The children's court concluded that it had jurisdiction pursuant to Section 32-1-9 and that the legal and physical custody of the children should be in DHS. The children's court order of February 1, 1985, continued custody of the children with DHS for a period not to exceed six months.

The ruling that the children's court had jurisdiction under Section 32-1-9 raises the issue of how that section and the CCJA interrelate. The children's court apparently did not consider the impact of the PKPA.

The pertinent provisions of Section 32-1-9(A) state that the children's court "has exclusive original jurisdiction of all proceedings under the Children's Code * * * [when] a child [is] alleged to be: * * * (3) a neglected child[.]"

However, Section 40-10-15(A) states:

A. If a court of another state has made a custody decree, a district court of New Mexico shall not modify that decree unless:

(1) it appears that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with the Child Custody Jurisdiction Act [40-10-1 to 40-10-24 NMSA 1978] or has declined to assume jurisdiction to modify the decree; and

(2) the district court of New Mexico has jurisdiction.

No claim is made that a distinction should be made between "children's court" in Section 32-1-9 and "district court" in Section 40-10-15. *See* § 32-1-3(C) and *In re Guardianship of Arnall,* 94 N.M. 306, 610 P.2d 193 (1980). The children's court is a division of the district court.

DHS claims that the limitation on the exercise of jurisdiction stated in Section 40-10-15(A) does not apply when the state initiates proceedings under Section 32-1-9(A). DHS presents five arguments. We identify and answer each argument.

■ (a) Section 40-10-15(A) pertains to the modification of a custody decree of another state. A custody decree had been entered in Texas. DHS claims there is no issue as to the applicability of Section 40-10-15(A) because the children's court proceedings did not involve modification of a custody decree.

Section 40-10-3(B) defines a "custody determination" as meaning "a court decision and court orders and instructions providing for the custody of a child * * *." Section 40-10-3(G) defines a "modification decree" as meaning "a custody decree which modi-

fies or replaces a prior custody decree * *." Similar definitions appear in 28 U.S.C.A. Section 1738A(b)(3) and (5). Avinger's custody of the children under the Texas decree has been modified by the children's court order of February 1, 1985, which continued custody in DHS. The claim that there has been no modification of the Texas decree is meritless. *Cf. E.P. v. District Court of Garfield County,* 696 P.2d 254 (Colo.1985).

(b) Section 40–10–4(A) states four grounds on which a New Mexico court has jurisdiction under the CCJA. Any one of the four grounds is sufficient for a New Mexico court to have jurisdiction. *Olsen v. Olsen,* 98 N.M. 644, 651 P.2d 1288 (1982).

DHS states that the children's court had jurisdiction under Section 40–10–4(A)(3) because the children are physically present in New Mexico and because the children's court found that the children had been abandoned.

■ Section 40–10–15(A)(2) states that the district court may not modify a custody decree of another state unless the district court has jurisdiction. We agree that the children's court had jurisdiction. This, however, does not fulfill the requirement that the New Mexico court "shall not modify" the decree of another state unless the requirements of Section 40–10–15(A)(1) are met. Similar requirements appear in 28 U.S.C.A. Section 1738A(f). The fact that the New Mexico court had jurisdiction does not answer the question of whether the New Mexico court had authority to modify the Texas decree.

(c) The New Mexico decisions involving the CCJA have been disputes between parents located in different states. *Serna v. Salazar,* 98 N.M. 648, 651 P.2d 1292 (1982); *Olsen v. Olsen; Hester v. Hester,* 100 N.M. 773, 676 P.2d 1338 (Ct.App.1984). The New Mexico decisions involving the PKPA also involve disputes between parents in different states. *Tufares v. Wright,* 98 N.M. 8, 644 P.2d 522 (1982); *Belosky v. Belosky,* 97 N.M. 365, 640 P.2d 471 (1982); *State ex rel. Valles v. Brown,* 97 N.M. 327, 639 P.2d 1181 (1981).

DHS asserts that the provisions of the CCJA which are applicable to custody disputes between parents "are not applicable to custody proceedings authorized by child neglect statutes where the state is a party." That the prior decisions in New Mexico involving the CCJA and the PKPA have involved disputing parents, and this case does not, does not aid DHS. This is a first impression issue.

New Mexico is acting, theoretically, in the best interests of the children, *see Olsen v. Olsen,* and as *parens patriae. In re Santillanes,* 47 N.M. 140, 138 P.2d 503 (1943). New Mexico, through its DHS, has obtained a court order awarding it custody of the children of a Texas resident to whom a Texas court had awarded custody. New Mexico obtained that order on the basis of Section 40–10–4(A)(3), which gives New Mexico courts jurisdiction when the child is physically present in New Mexico and the child has been abandoned *or* an emergency necessitates protection of the child because, in this case, of neglect.

The jurisdiction of a New Mexico court based on abandonment or an emergency, stated in Section 40–10–4(A)(3), is identical with the Uniform Child Custody Jurisdiction Act, Section 3(a)(3), 9 U.L.A. 122 (1979). The Commissioners' Note states:

Paragraph (3) of subsection (a) retains and reaffirms *parens patriae* jurisdiction, usually exercised by a juvenile court, which a state must assume when a child is in a situation requiring immediate protection. This jurisdiction exists when a child has been abandoned and in emergency cases of child neglect.

* * * * * *

This section governs jurisdiction to make an initial decree as well as a modification decree. * * * Jurisdiction to modify an initial or modification decree of another state is subject to additional restrictions contained in sections 8(b) and 14(a).

*Id.* at 124–25. Section 14(a) of the Uniform Child Custody Jurisdiction Act, 9 U.L.A. 153 (1979), is similar to Section 40–10–15(A), which limits the authority of New

Mexico courts to modify a custody decree of another state.

The Uniform Act provides that when a state proceeds under the abandonment or emergency provisions of Section 40–10–4(A)(3), the jurisdiction of that state's courts to modify a custody decree is limited by Section 40–10–15(A). When the state seeks a change of custody on the basis of abandonment or emergency, Section 40–10–15(A) applies.

■ The limitation on the authority of the children's court to modify another state's custody decree applies when the state seeks that modification under Section 40–10–4(A)(3). The application of this limitation is discussed in the second issue.

(d) Although the CCJA applies to the state, see (c) above, DHS contends "the primary purpose of [the] CCJA is to facilitate the orderly resolution of child custody disputes between parents located in different states." We agree that is a purpose, *see* Section 40–10–2(A) to (D); however, Section 40–10–2 does not state that resolution of disputes between parents is the primary purpose. Section 40–10–2(G) states a purpose of facilitating the enforcement of custody decrees of other states. Section 40–10–2(I) states a purpose of making the laws of New Mexico uniform with the laws of other states which enact similar laws. Texas has enacted a similar law. Tex.Fam.Code Ann. §§ 11.51 to 11.75 (Vernon 1985 Pamp.Supp.). Section 11.51(a)(7) and (9) is congruent with Section 40–10–2(G) and (I). Section 11.64(a) limits the authority of Texas courts to modify a custody decree of another state. Section 11.64(a) is congruent with Section 40–10–15(A)(1).

As a part of its "primary purpose" argument, DHS emphasizes the interest of New Mexico in protecting the children and seems unconcerned with any interest Texas may have. DHS states: "Avinger's abandonment of her children in New Mexico is the principal fact in the record, and the ability of the State to act expeditiously to protect those children should not be subject, as Avinger would have it, to the vagaries of interest analysis to determine which state has jurisdiction."

The children's court found abandonment, but not in New Mexico. Under the findings and the evidence, any abandonment occurred in Texas. Abandonment in New Mexico is *not* a fact.

"[V]agaries of interest analysis" is an unenlightening pejorative phrase. The reason for limiting the exercise of jurisdiction, Section 40–10–15(A), is discussed in the Commissioners' Prefatory Note to the Uniform Act, 9 U.L.A. at 111–14. Describing the situation which the CCJA was designed to correct, the Note states:

> There is no certainty as to whether a custody decree rendered in one state is entitled to recognition and enforcement in another; nor as to when one state may alter a custody decree of a sister state.
>
> \*  \*  \*  \*  \*  \*
>
> \* \* \* [U]niform legislation has been urged in recent years to bring about a fair measure of interstate stability in custody awards.
>
> \*  \*  \*  \*  \*  \*
>
> Underlying the entire Act is the idea that to avoid the jurisdictional conflicts and confusions which have done serious harm to innumerable children, a court in one state must assume major responsibility to determine who is to have custody of a particular child; that this court must reach out for the help of courts in other states in order to arrive at a fully informed judgment which transcends state lines and considers all claimants, residents and nonresidents, on an equal basis and from the standpoint of the welfare of the child. If this can be achieved, it will be less important *which* court exercises jurisdiction but that courts of the several states involved act in partnership to bring about the best possible solution for a child's future.

*Id.* at 112–14 (citations omitted; emphasis in original).

The PKPA is consistent with the above quotations from the Note. Congressional

Findings in Section 7 of Pub.L. 96–611, a part of the PKPA, are quoted in a Note to 28 U.S.C.A. Section 1738A. Section 7(a)(2) refers to inconsistent and conflicting laws and practices by which courts determine their jurisdiction. Section 7(b) refers to the need for national standards under which courts will determine their jurisdiction.

Section 40–10–15(A)(1) reflects the legislature's decision that there should be a standardized approach to the question of authority to modify another state's custody decree. DHS may dislike this legislative decision, but that dislike provides no basis for this court to hold that the children's court could modify a Texas decree in violation of Section 40–10–15(A)(1). *Cf. State ex rel. Valles v. Brown; State ex rel. New Mexico State Highway Department v. Silva,* 98 N.M. 549, 650 P.2d 833 (Ct.App. 1982).

(e) DHS states, "[T]he specific child neglect statute, the Children's Code, applies over the more general statutory statement of [the] CCJA." We understand this statement as a claim that the exclusive original jurisdiction conferred upon the children's court by Section 32–1–9(A) for proceedings in which a child is alleged to be neglected, that is, abandoned or neglected, *see* Section 32–1–3(L)(1) and (2), is a specific provision which controls over Section 40–10–15(A)(1).

Section 32–1–9(A) is specific as to the jurisdiction of the children's court in abandonment or neglect proceedings under the Children's Code. Section 40–10–4(A)(3) is similarly specific as to the jurisdiction of the district court for an abandoned child or an emergency based on neglect. Because no distinction is to be made between the children's court, which is a division of the district court, and the district court itself, no specific-general issue arises from this grant of jurisdiction.

The specific-general issue arises because Section 32–1–9 specifically grants jurisdiction to the children's court in abandonment and neglect proceedings, and Section 40–10–15(A)(1) limits the exercise of jurisdiction to modify another state's custody de- cree without regard to the grounds for modification.

Where there are conflicting statutory provisions, the specific rule governs over the general. *In re Rehabilitation of Western Investors Life Insurance Co.,* 100 N.M. 370, 671 P.2d 31 (1983). There is no basis for applying this rule if there is no conflict.

Section 32–1–9(A) grants exclusive original jurisdiction to the children's court. Section 40–10–15(A)(1) does not tamper with this grant; it does not place jurisdiction in another court. Section 40–10–15(A)(1) provides that the jurisdiction, which the children's court retains, is not to be utilized to modify another state's custody decree, unless certain requirements are met. There is nothing to the contrary in Section 32–1–9(A). There being no conflict, the special-general rule does not apply.

■ The applicable rule of construction is the rule applying to statutes *in pari materia.* Section 32–1–9(A) and Section 40–10–15(A)(1) are *in pari materia* because both deal with jurisdiction. *Livingston v. Ewing,* 98 N.M. 685, 652 P.2d 235 (1982). Being *in pari materia,* they are to be construed together, if possible, to give effect to the provisions of both statutes. *State ex rel. State Park & Recreation Commission v. New Mexico State Authority,* 76 N.M. 1, 411 P.2d 984 (1966). *Cf. E.P. v. District Court of Garfield County.* Our construction, that Section 32–1–9(A) gives the children's court the exclusive authority to act, and that Section 40–10–15(A) limits when that authority is to be exercised, gives effect to both statutes.

The foregoing discussion disposes of DHS's claim that the limitation in the exercise of jurisdiction does not apply. Section 40–10–15(A) does apply. Our discussion has been of New Mexico law. However, we have, at times, pointed out similar provisions in the PKPA. The reason is that even if Section 40–10–15(A) did not apply, federal law would limit the children's

court's authority to modify the Texas custody decree.

28 U.S.C.A. Section 1738A provides:

(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

\* \* \* \* \* \*

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

New Mexico law that is contrary to the PKPA is preempted by that federal statute. *State ex rel. Valles v. Brown. See Olsen v. Olsen; Tufares v. Wright; Belosky v. Belosky.*

Thus, under both the CCJA and the PKPA, there is a limitation upon the children's court's authority to modify the Texas decree.

## CHILDREN'S COURT AUTHORITY UNDER THE FACTS

This issue does not involve the authority of the children's court to issue the temporary custody orders of November 5, 1984, and December 11, 1984. No issue is raised as to those orders. *Cf. E.P. v. District Court of Garfield County.* This issue involves the authority of the children's court to issue the order of February 1, 1985.

■ The PKPA applies if the Texas custody determination was made consistently with the provisions of 28 U.S.C.A. Section 1738A. Whether the Texas decree was consistent is determined by 28 U.S.C.A. Section 1738A(c). That subsection states two requirements. The record shows that the second requirement was met. Texas had been the children's home state within six months of the commencement of proceedings in New Mexico. The children were absent from Texas because of removal by relatives, and Avinger, at the time of the New Mexico proceedings, continued to live in Texas. 28 U.S.C.A. § 1738A(c)(2)(A)(ii). The first requirement is that the Texas court had jurisdiction, under Texas law, to make the child custody determination. 28 U.S.C.A. § 1738A(c)(1). The custody determination was made by a Texas court in a proceeding in which Avinger obtained a divorce at a time that Avinger was a Texas resident. There is nothing indicating that the Texas court, under Texas law, did not have jurisdiction and there is no claim that the Texas court lacked jurisdiction. On this record, we hold that the PKPA applies.

Under both 28 U.S.C.A. Section 1738A(f) and Section 40–10–15(A), the children's court lacked the authority to modify the Texas custody decree unless the Texas court no longer had jurisdiction or had declined to exercise jurisdiction to modify its custody decree. There is nothing indicating that, at the time of the children's court proceedings, Texas no longer had jurisdiction or that Texas had declined to exercise such jurisdiction.

There being an absence of a basis for the children's court to modify the Texas custody decree, the children's court lacked authority to enter its order of February 1, 1985.

## MOTION TO DISMISS THE APPEAL AS MOOT

■ While the appeal was pending, DHS moved to dismiss the appeal as moot. The motion alleges that Avinger had not maintained contact either with her attorney or with DHS since March 15, 1985; that efforts to contact Avinger had failed; and that DHS has filed a petition for the termination of Avinger's parental rights. On the basis that Avinger's whereabouts are unknown, DHS asserts that no relief can be granted by this court. On the basis that this court cannot grant any relief, DHS asserts the appeal is moot.

The premise of the mootness claim is that Avinger's whereabouts are unknown. That is a contested issue of fact. Not being an established fact, the premise does not come within NMSA 1978, Crim., Child. Ct., Dom.Rel. & W/C App.Rule 308(c) (Repl.Pamp.1983). Not being an established fact, the premise provides no basis for action by this appellate court.

Even if Avinger's whereabouts became unknown during this appeal, she has not forfeited her right to appeal, particularly in this case where the children's court lacked authority to enter the custody order of February 1, 1985. *Cf. Mascarenas v. State,* 94 N.M. 506, 612 P.2d 1317 (1980).

The motion to dismiss the appeal as moot is denied.

The order of February 1, 1985, is vacated. The children's court is directed to comply with Section 40–10–15(A) and 28 U.S. C.A. Section 1738A(a) and (f) as a prerequisite to further proceedings in connection with custody modification.

IT IS SO ORDERED.

DONNELLY, C.J., and MINZNER, J., concur.