760 P.2d 1295

In the Matter of the Termination of Parental Rights of LAURIE R., Respondent, and with respect to the Child, Jean R.

LAURIE, R., Respondent–Appellant,

v.

NEW MEXICO HUMAN SERVICES DEPARTMENT, Petitioner–Appellee.

No. 10119.

Court of Appeals of New Mexico.

June 14, 1988.

Larry Van Eaton, Taos, for respondent-appellant.

Jennifer A. Salisbury, Gen. Counsel, Susan K. Rehr, Asst. Gen. Counsel, Human Services Dept., Santa Fe, for petitioner-appellee.

Colin Alcott, Taos, Guardian Ad Litem.

## OPINION

DONNELLY, Chief Judge.

Respondent (mother) appeals from an order of the district court terminating her parental rights to her minor daughter. We discuss: (1) whether the trial court possessed personal and subject matter jurisdiction; (2) whether the trial court erred in denying the mother's motion for a continuance; (3) whether the trial court erred in admitting into evidence prior mental health commitment records of the mother; and (4) whether the trial court's findings are supported by proper standard of evidence. We affirm.

The child, Jean R., was born in September, 1977. The natural father, Clifton R., was a member of the Cheyenne–Arapahoe Tribe, and is now deceased. The child is an enrolled member of her father's tribe; the mother, however, is a non-Indian. Since the child was six months old, she has been moved between various foster homes and the homes of relatives. Although the child is now approximately eleven years old, she has resided with her mother for only approximately three years.

In July of 1983, the mother, while living in Montana, contacted her sister in New Mexico and requested that she assist her in caring for the child. With the mother's permission, the sister removed the child from Montana and brought her to Taos. After the child had resided briefly with her aunt, the Human Services Department (department), acting in part on information supplied by the aunt, instituted proceedings against the mother alleging that the child was neglected. Following a hearing, the child was found to be neglected and legal custody was transferred to the department. This determination was previously affirmed on appeal by this court. *See In re Jane Doe*, Ct.App.No. 8895 (Memorandum Opinion Filed January 9, 1986).

On June 13, 1985, the department filed a petition for termination of the mother's parental rights. During the pendency of this action, the department sought to amend its original petition by filing three separate amended petitions. On March 30, 1987, the mother filed a motion to dismiss, a motion for continuance and a response to the petition. Thereafter, the department filed a motion to consolidate the several amended petitions or, alternatively, for leave to file a third amended petition. The court granted the department's motion to file a third amended petition and denied the mother's motions to dismiss and for a continuance. During the proceedings below the child was represented by a guardian ad litem appointed by the court. Following a trial on the merits, the court adopted findings of fact and conclusions of law and entered a judgment terminating the mother's parental rights.

## I. JURISDICTION

The mother claims that the trial court lacked both personal and subject matter jurisdiction to terminate her parental rights.

### A. *Personal Jurisdiction*

■ The constitutional requirement relating to personal jurisdiction was articu-

lated in *International Shoe Co. v. State of Washington Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), wherein the Supreme Court stated that, for due process standards to be met, the defendant need have only "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (Quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).) Jurisdiction over the person embraces due process notions of contact with the state and sufficiency of notice of the action. *In re Doe*, 99 N.M. 517, 660 P.2d 607 (Ct.App.1983). Service of process by personal delivery of the papers within the state generally serves to indicate that defendant has an appropriate relationship to the state and has been given notice of the proceedings against him. *Clark v. LeBlanc*, 92 N.M. 672, 593 P.2d 1075 (1979).

The mother asserts that even though she was personally served in the state in the termination proceedings, requisite minimum contacts were absent in order to subject her to this state's jurisdiction. She argues that the only contacts she had with New Mexico were involuntary and necessitated by her efforts to regain custody of her child. Determination of whether minimum jurisdictional contacts exist turns on the degree to which the person over whom jurisdiction is sought has purposefully availed himself of the benefits, protections, and privileges of the laws of the forum state. *See Fox v. Fox*, 103 N.M. 155, 703 P.2d 932 (Ct.App.1985).

If the defendant is properly served with process while physically present in the state, ordinarily the court has in personam jurisdiction. *See* M.E. Occhialino, *Walden's Civil Procedure in New Mexico* 1–23 & –24 (2d ed. 1988). Respondent in effect contends that an exception should be recognized on these facts, because she was in New Mexico solely for the purpose of regaining custody of her child. We assume but need not decide that a due process inquiry is relevant. *But cf. Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding").

The mother initially agreed that the child come to New Mexico to reside with her sister. The mother came to New Mexico twice to regain custody of the child. The record indicates that she was not able to care for the child, that her sister refused to relinquish physical custody each time, and that her sister ultimately asked the Department for assistance. After the Department took custody of the child, respondent consented to an order giving the Department custody, but later contested custody and the validity of her consent. After the child was adjudicated neglected, the mother remained in New Mexico and participated in a local treatment plan ordered by the court.

On these facts, New Mexico had sufficient contacts with the mother to justify the assertion of personal jurisdiction for purposes of terminating parental rights. Respondent has not demonstrated that the assertion of jurisdiction is unreasonable, and we are not persuaded that it is unfair. We conclude that if a due process inquiry is appropriate, due process was provided.

The mother has lived in this jurisdiction since 1984, has attended college here, and has been employed in New Mexico. Moreover, she was personally served with process in this state in the present proceeding. The record amply supports the trial court's finding that the court obtained personal jurisdiction over both the child and her mother. *See United Nuclear Corp. v. General Atomic Co.*, 91 N.M. 41, 570 P.2d 305 (1977).

## B. *Subject Matter Jurisdiction*

The mother also challenges the trial court's subject matter jurisdiction. She ar-

gues that the department failed to file a verified petition seeking termination of parental rights within the time limits proscribed by statute, thereby depriving the trial court of jurisdiction. The mother also claims that the district court erroneously denied her oral request that termination proceedings be transferred to a tribal court.

An action for termination of parental rights is initiated by filing an application for termination, signed and verified by the applicant. NMSA 1978, § 32–1–55(B) (Repl.1986). In this case, a series of petitions and amended petitions were filed by the department.[1]

■ The mother argues that because the department's initial petitions were unverified, the action must be dismissed because this omission deprived the court of subject matter jurisdiction. *See Dinwiddie v. Board of County Comm'rs*, 103 N.M. 442, 708 P.2d 1043 (1985), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 1974, 90 L.Ed.2d 658 (1986) (involving an unverified petition in an action challenging the validity of a bond election). The rule articulated in *Dinwiddie*, however, is not controlling here because in the present action there is no statutory mandatory time limit prescribed for the department to file its petition for termination of parental rights.[2]

■ The Children's Code, NMSA 1978, Sections 32–1–1 to –55 (Repl.1986 & Supp. 1987) and the Children's Court Rules,

SCRA 1986, 10–101 to –311, do not expressly delineate whether the Children's Court Rules apply to proceedings for the termination of parental rights, or whether procedural amendments in such actions are controlled by the Rules of Civil Procedure for the District Courts, SCRA 1986, 1–001 to –102. The Children's Court Rules state that "[t]hese rules govern the procedure in the children's courts of New Mexico in all matters involving children alleged to be delinquent, in need of supervision, abused or neglected. * * *" Rule 10–101(A). The committee commentary following this provision states that these rules are specifically limited to such proceedings and that they are not intended to establish procedures for other proceedings under the Children's Code. Additionally, the statute governing termination proceedings refers expressly to the Rules of Civil Procedure. *See* § 32–1–55(C) & (D). Thus, we conclude that the Rules of Civil Procedure for the District Courts apply to proceedings for the termination of parental rights.

Under SCRA 1986, 1–015(A), a party may amend his pleadings once as a matter of course at any time before a responsive pleading is served; otherwise, a party may amend his pleading only by leave of the court. Amendments to pleadings are favored and should be freely allowed in the interests of justice. *See First Nat'l Bank of Santa Fe v. Southwest Yacht & Marine Supply Corp.*, 101 N.M. 431, 684 P.2d 517 (1984); *Hambaugh v. Peoples*, 75 N.M. 144, 401 P.2d 777 (1965). The decision to grant

---

1. The initial petition required amendment to include the facts and circumstances supporting the grounds for termination. A second amended petition was filed November 20, 1985, to include allegations concerning the tribal affiliations of the child and her father, the specific actions taken by the department to notify the tribe of the termination proceedings, and the tribe's response concerning the issuance of a waiver of participation in these proceedings. Still another petition was filed March 10, 1987, to include the issues of disintegration of the parent-child relationship and foster family-child bonding. The last amended petition was filed April 6, 1987, to encompass the information contained in the prior petitions and to verify the petition.

2. Where a child has been in substitute care for eighteen months or longer and it is determined that the child cannot be returned to his parents, the department is required to initiate proceedings seeking termination of parental rights. *See* NMSA 1978, §§ 32–1–38.1(F)(5) & –38.2(B) (Supp.1987). The time factors contained in the statute, although directory in nature, do not mandate that a petition for termination of parental rights must be filed within eighteen months after the adjudication of neglect or the action will be barred.

or deny a proposed amendment rests within the sound discretion of the trial court. *State for Use & Benefit of Pennsylvania Transformer Div., McGraw–Edison Co. v. Electric City Supply Co.*, 74 N.M. 295, 393 P.2d 325 (1964); *Beyale v. Arizona Pub. Serv. Co.*, 105 N.M. 112, 729 P.2d 1366 (Ct.App.1986). This court will not reverse a trial court's allowance of amendment to the pleadings, except where an abuse of discretion has been shown. *Hambaugh v. Peoples; Camp v. Bernalillo County Medical Center*, 96 N.M. 611, 633 P.2d 719 (Ct.App.1981). The key factor in the exercise of discretion is whether prejudice resulted to the opposing party. *Beyale v. Arizona Pub. Serv. Co.*

■ The trial court heard the arguments of counsel concerning the department's motion to amend and determined that the mother was aware of the nature of the proceedings, the proposed amendments, and that she would not be prejudiced by the amendment. *See Camp v. Bernalillo County Medical Center.* Although the department failed to obtain the trial court's permission prior to filing its amended petitions, the court granted permission to file the final amended petition and verification prior to the commencement of trial. Allowance of the amendment rectified any insufficiency in the pleadings. *See Bombach v. Battershell*, 105 N.M. 625, 735 P.2d 1131 (1987). On the record before us, the mother has not established any prejudice; thus, we find no error in the trial court's order.

■ The mother also argues that the trial court lacked subject matter jurisdiction to terminate her parental rights because this case is governed by the Indian Child Welfare Act of 1978 (ICWA). *See* 25 U.S.C.A. §§ 1901 to –63 (1983). The mother contends the proceeding should have been transferred at her request by the Taos district court to the Cheyenne–Arapahoe tribal court. The federal statute governing transfer of jurisdiction over termination proceedings involving Indian children provides, in applicable part:

In any State court proceeding for * * * termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, *the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe * * * upon the petition of either parent * * ** [p]rovided, [t]hat such transfer shall be subject to declination by the tribal court of such tribe.

25 U.S.C.A. § 1911(b) (emphasis added).

The mother orally requested at trial that the proceeding be transferred. The trial court found that neither the tribe nor the mother filed a written petition to transfer this case to the tribal court. Section 1911(b) does not specify whether the petition must be oral or written. Guidelines drafted by the Bureau of Indian Affairs for implementation of the Act state that a parent may request, orally or in writing, that the proceeding be transferred to the tribal court. *See Guidelines for State Courts; Indian Child Custody Proceedings (Guidelines)*, 44 Fed.Reg. 67584 (1979). The *Guidelines* further provide that upon receipt of the petition, the court should transfer jurisdiction unless either parent objects, the tribal court declines jurisdiction, or the court determines that good cause exists for denying the transfer. *Id.* After hearing arguments of counsel, the trial court determined that good cause existed to proceed and to deny a transfer. We find no error in this determination. The record indicates that the tribe executed a written waiver of participation in the proceeding. *See In re J.M.*, 718 P.2d 150 (Alaska 1986).

The *Guidelines* further provide that good cause may exist to deny a transfer if the proceedings are at an advanced stage when the petition to transfer is received. *See* 44 Fed.Reg. 67584. In this case, the petition was received after trial had commenced. Under these circumstances, good cause existed to deny the requested transfer, and the trial court's denial of the motion to transfer was not an abuse of discretion and did not constitute error.

## II. CONTINUANCE

The mother asserts that the trial court erroneously denied her motion for a continuance after allowing the department to amend its petition, and that this denial resulted in a violation of her right to due process. Specifically, she claims that because the March 10, 1987 petition was invalid, the first legal notice she received of the department's intent to raise the issue as to bonding between the child and her foster parents was after the trial began. We disagree.

Procedural due process requires notice to each of the parties of the issues to be determined and opportunity to prepare and present a case on the material issues. *See In re Guardianship of Arnall*, 94 N.M. 306, 610 P.2d 193 (1980). The granting or denial of a continuance is within the sound discretion of the trial court and will be reviewed only for plain abuse. *Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.*, 99 N.M. 95, 654 P.2d 548 (1982); *see El Paso Elec. v. Real Estate Mart, Inc.*, 98 N.M. 490, 650 P.2d 12 (Ct. App.1982). Here, the mother was placed on notice as early as August, 1986, that the department intended to raise the bonding issue.[3] Based on a review of the record and the pleadings herein, the mother was given advance notice of the issues to be tried and had a reasonable opportunity to prepare her case. We find no error in the trial court's denial of the motion for continuance. *See New Mexico Feeding Co. v. Keck*, 95 N.M. 615, 624 P.2d 1012 (1981).

## III. EVIDENCE OF PRIOR COMMITMENTS

The mother argues that the trial court erred in admitting into evidence Exhibit No. 1, consisting of a letter of transmittal and a case narrative of a Stearns County, Minnesota social worker's contracts with the mother in 1980. The exhibit also contains a written chronological summary of social service contacts with the mother while she was hospitalized in St. Paul, Minnesota for mental problems in 1980. The mother's docketing statement, however, raises the issue of records regarding prior commitments in 1974 and 1975 at a Montana state hospital, which are said to have been admitted during the testimony of a psychiatrist. The docketing statement does not raise the issue of whether the trial court erred in admitting into evidence of prior commitments in 1980. Issues not raised in the docketing statement may not be raised for the first time in the brief in chief and will not be considered by the court when they do not fall within any exceptions to this rule. *Romero v. Romero*, 101 N.M. 345, 682 P.2d 201 (Ct. App.1984).

## IV. SUFFICIENCY OF EVIDENCE

The mother's final point on appeal challenges the propriety of the trial court's decision terminating her parental rights and asserts that the court's findings as to this issue were not supported by evidence beyond a reasonable doubt. At trial, the guardian ad litem argued that the best interests of the child necessitated termination of the mother's parental rights.

In any proceeding involving a child subject to the ICWA, a trial court's decision to terminate parental rights will be upheld if its findings are in accord with applicable law and are supported by evidence establishing a basis for termination of parental rights beyond a reasonable doubt. *See In re Doe*, 98 N.M. 198, 647 P.2d 400 (1982). Reasonable doubt is such doubt as would cause a reasonable and prudent man to pause and hesitate to act in the graver and more important affairs of life. *State v. Ellison*, 19 N.M. 428, 144 P. 10 (1914). Reasonable doubt does not mean absolute certainty. *See State v. Cranford*, 83 N.M.

---

**3.** In James M. Brandenburg's motion to withdraw as counsel for mother, he stated that "[o]n or about August 5, 1986, Harold Breen, Attorney for the * * * Department advised me that he was going to amend the Petition for Termination filed herein, to bring into the action Juan and Mary Frances Aragon, the foster parents of Jean * * * a minor."

294, 491 P.2d 511 (1971), *cert. denied,* 409 U.S. 854, 93 S.Ct. 190, 34 L.Ed.2d 98 (1972).

Section 32–1–55(H) specifies the standard of proof required in order to terminate parental rights. The statute provides, in applicable part:

The grounds for termination * * * [of parental rights] shall be proved by clear and convincing evidence; provided, however, the grounds for any attempted termination must be proved beyond a reasonable doubt and meet the requirements of 25 U.S.C. Section 1912(f) in any proceeding involving a child subject to the Indian Child Welfare Act, 25 U.S.C. Sections 1901 et seq.

■ Section 1912(f) of the ICWA provides that "[n]o termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt * * * that the continued custody of the child by the parent * * * is likely to result in serious emotional or physical damage to the child." In proceedings seeking termination of parental rights wherein the matter is not controlled by the ICWA, the grounds for any attempted termination need only be proved by clear and convincing evidence. § 32–1–55(H); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599, *on remand, In re John AA,* 89 A.D.2d 738, 453 N.Y.S.2d 942 (1982). We apply the higher standard of proof because the ICWA imposes this standard on state courts properly exercising jurisdiction over custody cases involving Indian children. *See In re Jason Y.,* 106 N.M. 406, 744 P.2d 181 (Ct.App.1987); Wamser, *Child Welfare Under the Indian Child Welfare Act of 1978: A New Mexico Focus,* 10 N.M.L.Rev. 413 (1980).

In determining whether the evidence supports the findings and decision of the trial court, we view the evidence in the light most favorable to the prevailing party, and resolve all conflicts and indulge in all permissible inferences therefrom in favor of the decision of the trial court. *See State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978).

An appellate court will not substitute its judgment for that of the trial court. *Id.; In re Adoption of John Doe,* 98 N.M. 340, 648 P.2d 798 (Ct.App.1982). It is for the trier of fact to weigh the evidence, determine credibility of witnesses, reconcile inconsistent or contradictory statements of witnesses and determine where the truth lies. *Lewis v. Bloom,* 96 N.M. 63, 628 P.2d 308 (1981).

Parental rights may be terminated under the statutes that exist in New Mexico if any of the following grounds are established: (1) abandonment of the child; (2) the child has been left with others and its parents are unknown and cannot be ascertained; (3) the child is neglected or abused; or (4) the child has remained for an extended period of time in the care of third persons, the parent-child relationship has disintegrated, and a psychological parent-child relationship has developed between the child and a substitute family who desires to adopt the child. In this case, the trial court determined that the department had met its burden of proof in establishing the criteria for termination of parental rights under both the third and fourth grounds. *See* § 32–1–54(B).

The mother argues that the department failed to prove the basis for terminating parental rights pursuant to the fourth ground because it did not show that the parent-child relationship had disintegrated. We disagree.

Dr. Elizabeth Dinsmore, a clinical psychologist, testified that there had never been a strong parent-child bond existing between the mother and child. Another clinical psychologist, Dr. Geoffrey Sutton, also agreed that the mother-child relationship was weak. At trial, the child was interviewed by the court and expressed a desire to live with her foster parents. Moreover, the trial court's findings detail the series of custodial settings in which the child has been placed since an early age.

Based on the record before us, we conclude that there is substantial evidence beyond a reasonable doubt to support the

trial court's termination of the mother's parental rights under Section 32-1-54(B)(4). Because each ground is an independent basis for termination of parental rights, we do not address whether the department failed to prove the basis for termination pursuant to the third ground of the statute. *See In re Doe*, 98 N.M. 442, 649 P.2d 510 (Ct.App.1982).

## V. APPLICABILITY OF OTHER ACTS

The mother's motion to amend her docketing statement was granted by this court. The amendment alleged that the New Mexico Child Custody Jurisdiction Act, Sections 40–10–1 to –24 (Repl.1986), and the Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A (Cum.P.P.1988), require the New Mexico courts to defer to the jurisdiction of the Oklahoma or Montana courts concerning this cause. At oral argument the mother withdrew her contention as to the applicability of the Parental Kidnapping Prevention Act. The mother concedes that a copy of the alleged Oklahoma child custody decree was not tendered to the trial court nor did she request to have the decree judicially noticed. Under these facts the mother has failed to establish error or lack of jurisdiction on the part of the district court herein. Moreover, under the facts as shown by the record before us, we conclude that the New Mexico Child Custody Jurisdiction Act did not supersede or invalidate the termination proceeding brought under Section 32-1-54.

The mother also relies upon *State ex rel. Department of Human Services v. Avinger*, 104 N.M. 355, 721 P.2d 781 (Ct.App. 1985), as supporting her contention that the district court herein lacked jurisdiction to terminate her parental rights, and arguing that New Mexico must defer to the courts of either Oklahoma or Montana. *Avinger* is not dispositive of the present case, however, because the mother has failed to indicate a factual basis for her claims that New Mexico lacked personal or subject matter jurisdiction over the parties. Neither has she shown that the child was subject to the provisions of a foreign decree, requiring that this state defer to jurisdiction of another forum.

## CONCLUSION

We have considered each of the other issues raised by the mother on appeal and find them without merit. The mother's court-appointed counsel seeks an award of attorney fees and costs incident to this appeal. After entry of the mandate herein, the trial court is directed to determine an award of attorney fees for these services and for the Guardian Ad Litem on appeal. *See Termination of Parental Rights of Reuben & Elizabeth O. v. Department of Human Servs.*, 104 N.M. 644, 725 P.2d 844 (Ct.App.1986).

The order terminating parental rights is affirmed. The department's motion to supplement the record proper is denied.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.