772 P.2d 366 (1989)
108 N.M. 322
In the Matter of the Termination of Parental Rights with Respect to R.W., a Child.
STATE of New Mexico ex rel. DEPARTMENT OF HUMAN SERVICES, Petitioner-appellee,
v.
Carol WILLIAMS, Respondent-Appellant.
No. 10452.
Court of Appeals of New Mexico.
February 17, 1989.
Certiorari Denied March 22, 1989.
*367 Simon Romo, Children's Court Atty., Human Services Dept., Albuquerque, for petitioner-appellee.
Joseph William Reichert and Floyd W. Lopez, Albuquerque, for respondent-appellant.
Jonathan M. Diener, Albuquerque, guardian ad litem.

OPINION
MINZNER, Judge.
Mother appeals from the judgment of the trial court terminating her parental rights with respect to her son, R.W. on the grounds of neglect. The parental rights of R.W.'s father were terminated by a separate judgment filed the same day. Father neither responded to the petition nor entered an appearance in the case below, and the propriety of the termination of his rights is not an issue on appeal. *368 In addition to the issues listed in mother's docketing statement, we directed the parties to brief the issue of "how we should apply the standard of [appellate] review in determining whether the evidence is sufficient to support the trial court's findings where the burden of proof in the trial court is clear and convincing evidence." Both parties have briefed two issues in this case: the issue of applying the appropriate standard of appellate review, and the issue of whether two of the trial court's findings are supported by the evidence under that standard. Other issues listed in mother's docketing statement but not briefed on appeal are deemed abandoned. State v. Fish, 102 N.M. 775, 701 P.2d 374 (Ct.App. 1985).
We first discuss the standard of appellate review for parental termination cases. We also discuss whether mother preserved any issue as to the sufficiency of the evidence in view of the fact that she failed to request findings of fact. See generally Pedigo v. Valley Mobile Homes, Inc., 97 N.M. 795, 643 P.2d 1247 (Ct.App. 1982) (once a party has failed to request findings of fact, as a general rule he cannot obtain review of the evidence on appeal). Finally, under the circumstances of this case, we review the sufficiency of the evidence.
Here, the trial court required proof of the statutory grounds for termination, as well as a showing that termination was appropriate considering the child's physical, mental, and emotional health, and the court determined that these elements were proved by clear and convincing evidence. With respect to the challenged findings, we have reviewed the evidence in the light most favorable to the prevailing party and have concluded that a rational trier of fact could have found the evidence clear and convincing. Thus, the trial court should be affirmed.

STANDARD OF APPELLATE REVIEW.
The standard of appellate review applied in these cases has been stated by our supreme court:
In proceedings seeking the termination of parental rights, the grounds for any attempted termination must be proven by clear and convincing evidence. The clear and convincing evidence standard requires proof stronger than a mere "preponderance" and yet something less than "beyond a reasonable doubt."
For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.
The function of the appellate court is to view the evidence in the light most favorable to the prevailing party, and to determine therefrom if the mind of the factfinder could properly have reached an abiding conviction as to the truth of the fact or facts found.
In re Adoption of Doe, 100 N.M. 764, 767, 676 P.2d 1329, 1332 (1984) (quoting In re Adoption of Doe, 98 N.M. 340, 345, 648 P.2d 798, 803 (Ct.App. 1982)). See also In re Doe, 98 N.M. 198, 200, 647 P.2d 400, 402 (1982) ("A trial court's decision in termination of parental rights cases will be upheld if its findings are supported by clear and convincing evidence and if it applied the proper rule of law."). We note that in any proceeding involving a child subject to the Indian Child Welfare Act of 1978, 25 U.S.C.A. Sections 1901 to -63 (1983), a trial court's decision to terminate parental rights must be supported by evidence establishing a basis for termination beyond a reasonable doubt. See In re Laurie R., 107 N.M. 529, 760 P.2d 1295 (Ct.App. 1988).
Both mother and the Department of Human Services (the department) note that this court should and in fact does review the entire record of the case. Based on this, mother argues that this court should consider all the evidence, including the evidence that does not support the trial court's finding, in effect weighing the evidence, and determine whether or not the evidence supporting the trial court's findings remains "clear and convincing" in the face of evidence to the contrary.
The appellate court must review the evidence in the light most favorable to the prevailing party, indulging all reasonable inferences in support of the verdict and *369 disregarding all inferences or evidence to the contrary. See Duke City Lumber Co. v. Terrel, 88 N.M. 299, 540 P.2d 229 (1975); In re I.N.M., 105 N.M. 664, 735 P.2d 1170 (Ct.App. 1987); In re Estate of Fletcher, 94 N.M. 572, 613 P.2d 714 (Ct.App. 1980). Even in a case involving issues that must be established by clear and convincing evidence, it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies. Duke City Lumber Co. v. Terrel. We defer to the trial court, not because it is convenient, but because the trial court is in a better position than we are to make findings of fact and also because that is one of the responsibilities given to trial courts rather than appellate courts. Our responsibility is to review for reversible error.
In observing the rule that we indulge all reasonable inferences in support of the verdict and disregard all inferences or evidence to the contrary, we are following supreme court precedent. See Alexander v. Delgado, 84 N.M. 717, 507 P.2d 778 (1973). The rule does not preclude the appellate court from reviewing the entire record, but it expressly prohibits us from weighing the evidence. Duke City Lumber Co. v. Terrel.
Mother argues that this court should adopt the standard of appellate review of Blackburn v. Blackburn, 249 Ga. 689, 292 S.E.2d 821 (1982), under which the appellate court reviews the evidence in the light most favorable to the prevailing party and then determines whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights should be terminated. This standard represents an adaptation of the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which held that, in a habeas corpus proceeding by a state prisoner challenging the sufficiency of the evidence to support his convictions, the federal court was required to determine whether any rational trier of fact could have found each of the elements of the crime was proved beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. Our supreme court has adopted the Jackson standard as the appropriate standard to determine the sufficiency of the evidence supporting a criminal conviction. See State v. Brown, 100 N.M. 726, 676 P.2d 253 (1984); State v. Davis, 97 N.M. 130, 637 P.2d 561 (1981).
Mother does not, however, explain how the Blackburn standard differs from the present standard in any substantive fashion. Despite the difference in language, both the standard of review required by our supreme court and the standard of review required under Blackburn speak in terms of determining whether the findings are supported by clear and convincing evidence. We do not believe that the reference to a rational trier of fact adds anything that is not already implicit in the standard. Further, we note that this court is bound by supreme court predecent. See Alexander v. Delgado.
Finally, mother argues that this court should not affirm a trial court's termination of parental rights unless the evidence clearly and unequivocably shows that the child will suffer serious consequences if parental rights are not terminated. In support of her argument, mother cites In re Parental Rights to X, Y, & Z, 607 P.2d 911 (Wyo. 1980). We do not believe that this case supports mother's argument.
In In re Parental Rights to X, Y, & Z, the trial court had terminated rights because it thought the child would receive better parenting in the custody of the state. The Wyoming Supreme Court reversed, noting that the fact that a child might receive better care in a foster home or the home of another was not one of the statutory grounds for termination of parental rights. Our statutes and our cases are to the same effect. The fact that a child might be better off in a different environment is not a basis for termination of parental rights in this state. See In re Doe; In re Termination of Parental Rights of Reuben & Elizabeth O., 104 N.M. 644, 725 P.2d 844 (Ct.App. 1986). In order to terminate a parent's rights, the state must plead and prove one of the specific grounds for *370 termination set out in the statute. See NMSA 1978, § 32-1-54(B) (Repl. 1986). In addition, the trial court is required to give primary consideration to the physical, mental, and emotional welfare and needs of the child. § 32-1-54(A).
Mother urges us to adopt a more stringent standard of appellate review. She suggests that Wyoming engages in strict scrutiny of a trial court's decision to terminate parental rights. However, the standard of review in Wyoming is otherwise similar to that in New Mexico, because the appellate court views all the evidence in the light most favorable to the prevailing party, resolves all conflicts in the evidence in favor of the prevailing party, and ignores all evidence to the contrary. 607 P.2d at 919-920. Thus, we understand the Wyoming court's reference to strict scrutiny primarily as a description of the burden placed on the state at trial. Cf. In re Welfare of M.G., 407 N.W.2d 118 (Minn. App. 1987) (on review of a decision to terminate parental rights, an appellate court exercises great caution and will only affirm after a close inquiry into the sufficiency of the evidence to determine whether petitioner has met its burden of proof). Further, we note that this is an argument that must be addressed to the supreme court, rather than this court. See Alexander v. Delgado.
To the extent mother asks us to acknowledge that the appellate standard of review reflects the trial court burden of proof, we agree. As the Idaho Supreme Court has noted:
The substantial evidence or clearly erroneous standard of appellate review ... is not applied identically in all instances: the appellate standard of review parallels the trial court burden of proof. Obviously, the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence, than in cases where a ... preponderance [of evidence] is required.
In the Interest of Bush, 113 Idaho 873, 876, 749 P.2d 492, 495 (1988). Having acknowledged this principle, however, we must acknowledge as well that in applying this standard, the appellate court's primary task is to determine if the decision reached at trial is justifiable on the facts and the law. We are not entitled to make an independent determination.

PRESERVATION OF ERROR.
The record does not indicate that mother filed any requested findings of fact or conclusions of law. Ordinarily, when a party seeking a review of the evidence has failed to submit requested findings of fact, an appellate court will not review a claim that the evidence is insufficient. See generally Smith v. Maldonado, 103 N.M. 570, 711 P.2d 15 (1985).
However, questions of general public concern may be determined by this court without having been raised at the trial level, as may those that address fundamental rights of a party. Tiffany Constr. Co. v. Bureau of Revenue, 96 N.M. 296, 629 P.2d 1225 (1981); DesGeorges v. Grainger, 76 N.M. 52, 412 P.2d 6 (1966); see also SCRA 1986, 12-216(B). We have not previously decided whether either of these exceptions permits a review for sufficiency of the evidence in an appeal from a decision terminating parental rights, and neither party argued this issue on appeal.
We do not want to delay this appeal any further by requesting additional briefs. The legislature has expressed a public policy in favor of limiting the time a child is in substitute care. See, e.g., NMSA 1978, § 32-1-38.2(A) & (B) (Cum.Supp. 1988).
We know from the record that R.W. has been in the department's custody since May 1984. We also know that at the time of the termination hearing, in November 1987, he was almost four years old and had been placed in at least two different foster homes. Thus, under the circumstances of this case, we review the sufficiency of the evidence without deciding whether mother preserved the issue or whether, in any event, we should review the sufficiency of the evidence as a matter of fundamental right.

*371 SUFFICIENCY OF THE EVIDENCE.
The trial court terminated mother's rights under Section 32-1-54(B)(3), which provides for termination when:
[T]he child has been a neglected or abused child as defined in Section 32-1-3 NMSA 1978 and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions which render the parent unable to properly care for the child[.]
In addition, the trial court is required by statute to give primary consideration to the physical, mental, and emotional welfare and needs of the child. § 32-1-54(A).
In this case, it is undisputed that R.W. was previously adjudicated a neglected child. On appeal, mother challenges the sufficiency of the evidence to support the trial court's finding that the conditions and causes of the neglect are unlikely to change in the foreseeable future, and the sufficiency of the evidence to demonstrate that termination is appropriate considering the physical, mental, and emotional welfare and needs of the child. We conclude that the evidence is sufficient as to both findings.
The background facts in this case are undisputed. R.W. is the second of three children born to mother and her husband. When he was 27 days old, mother noticed R.W. would not eat, was always sleeping, and generally appeared to her to be very ill. She took him to the hospital, and the doctors decided to keep him there. R.W. was diagnosed at that time as having nonorganic failure to thrive. While he was still in the hospital, mother was served with a summons in a neglect action. Ultimately, mother entered into a stipulated judgment, under which R.W. was adjudicated neglected. The judgment included a treatment plan, under which mother agreed to a psychological evaluation and to attend parenting classes. R.W. was placed in a foster home.
Mother's attack on the findings amounts to the contention that nonorganic failure to thrive is simply a lack of nourishment, or, in other words, a failure to properly feed the child. From this premise mother argues that the trial court's finding of ultimate fact, that the causes of the neglect are unlikely to change in the foreseeable future, is not supported by clear and convincing evidence because none of the witnesses expressed concern that mother would not properly feed R.W. The record before the trial court, however, does not support the basic premise of the argument or its ultimate conclusion.
Mary Steir, Ph.D., a psychologist and professor at the University of New Mexico, testified concerning the meaning of a diagnosis of failure to thrive. Dr. Steir was qualified as an expert on this issue, and she testified without objection. Dr. Steir explained that children are diagnosed with this condition when they have failed to gain weight as expected and there is no organic cause for the failure to gain weight. In these circumstances, it is believed that the failure to gain weight results from some sort of parental interactional patterns, not the failure to provide enough nourishment or food. Even if a child returns to a normal weight after being removed from the home, that does not necessarily mean that the problem giving rise to the diagnosis has been resolved.
The department's other witnesses in this case included Debbie Sanchez, a teacher from Peanut Butter and Jelly Preschool, an organization that provides parent skills training, and Wilma McBride, the family life coordinator from the Young Children's Health Center, Department of Pediatrics at the University of New Mexico Medical School, who facilitated visitation between mother and R.W. while he was in the custody of the department and placed in a foster home. Both witnesses expressed the opinion that mother's inability to understand and provide for R.W.'s needs had not improved, despite psychological counseling and classes in parenting skills.
To the extent mother argues that the state failed to establish by clear and convincing evidence that termination was appropriate considering the physical, mental, *372 and emotional welfare and needs of the child, we disagree. To the extent mother implies that the child could have been restored to mother without serious consequences to the child, a slightly different argument, we also disagree.
As Dr. Steir noted, in these situations, the best predictor of the future is what has happened in the past. Both Dr. Steir and Ms. McBride expressed considerable concern for R.W. if he were returned to mother's custody. In particular, Ms. McBride, who had worked with mother and R.W. intensively during the period of time from October 1986 through March 1987, expressed the opinion that such a return would have a negative impact on R.W. and that he would have a difficult time developing the skills he would need to survive in the family. Ms. McBride testified that this negative impact could manifest itself as depression, and could have a long-term emotional impact on the child. Dr. Steir expressed similar concerns.
Mother argues that these are hypothetical concerns and are insufficient to support termination. We are not persuaded.
We recognize that the long period of separation may have made it more difficult for mother and R.W. to form appropriate bonding and attachment relationships. Furthermore, we realize the experts' concerns would be less hypothetical if R.W. had been returned on a trial basis to his mother's care at an earlier date. Then we would have direct evidence of R.W.'s reaction to the family life and of mother's capacity to acquire adequate parenting skills for R.W.
Nevertheless, while the trial court may not speculate as to the future care of a child, the court is not required to refrain from taking action until the child suffers an injury. In re I.N.M. By the same token, the state was not required to return R.W. to mother and wait for the negative consequences to be made manifest in order to demonstrate that there would be negative consequences.
Mother argues that this court should consider the undisputed fact that R.W.'s older and younger siblings are still living with mother and are acknowledged to be physically healthy. However, the question before the trial court was whether termination was appropriate as to R.W. It is undisputed that while the department has not moved to take either of the other children into custody, mother's relationship with both has been the subject of intervention by teachers at the Peanut Butter and Jelly Preschool and the Young Children's Health Center. Further, there was testimony that R.W.'s siblings have been able to adapt to the family's lifestyle because they have more assertive personalities than R.W. and because they have remained part of the family unit since birth.
Under these circumstances, we view the evidence on whether termination was appropriate considering R.W.'s welfare and needs as at best conflicting. The conflict was resolved by the trial court in favor of the department, and there is clear and convincing evidence to support that decision.

CONCLUSION.
It has been said that a decision to terminate parental rights is "`never to be made lightly or without a sense of compassion for the parent[.]'" In re Adoption of J.J., 511 Pa. 590, 605, 515 A.2d 883, 891 (1986) (quoting In re William L., 477 Pa. 322, 345, 383 A.2d 1228, 1239, cert. denied, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978)). The decision of the trial court also followed this approach.
In this case, there is evidence in the record that mother herself was in foster care for a number of years. It is possible that her own experience as a child contributed to the conditions that caused her to neglect R.W. and that she was unable, rather than unwilling, to correct those conditions.
However, the sufficiency of the evidence of neglect is not an issue in this case. Further, once the statutory grounds had been proved, the trial court was required to give primary consideration to the needs of the child. See § 32-1-54(A); cf. In re Adoption of J.J. (after a parent's incapacity is proved by clear and convincing evidence, judicial inquiry is to be centered on *373 the best interest of the child, rather than the fault of the parent).
Having concluded there was clear and convincing evidence to support the trial court's findings, we also conclude that the trial court was justified in terminating parental rights to R.W. Therefore, the judgment of the district court terminating mother's parental rights with respect to R.W. is affirmed.
IT IS SO ORDERED.
DONNELLY and HARTZ, JJ., concur.