794 P.2d 371

**In the Matter of the Termination of Parental Rights with Regard to RHONDA A. and Tanya A., Children.**

**RONALD A., Respondent–Appellant,**

v.

**STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT, Petitioner–Appellee.**

No. 11275.

Court of Appeals of New Mexico.

March 27, 1990.

Certiorari Granted May 8, 1990.

Peter Klages, Acting Gen. Counsel, Susan K. Rehr, Asst. Gen. Counsel Human Services Dept. Santa Fe, for petitioner-appellee.

Warren F. Frost Rowley & Parker, P.C. Clovis, for respondent-appellant.

Donna Quinn, Clovis, guardian ad litem

## OPINION

MINZNER, Judge.

On the court's own motion, the prior opinion is withdrawn and the following is substituted.

Father appeals the termination of his parental rights and related orders involving two children's court actions. One action involves a periodic review hearing in an abuse and/or neglect proceeding, pursuant to NMSA 1978, Section 32–1–38.1 (Repl. Pamp.1989), and the other concerns a hearing on the Human Service Department's (department) application for termination of parental rights. The abuse and neglect proceeding was assigned Curry County District Court No. 3617; the department's application for termination of parental rights was assigned Curry County District Court No. 3682. Both hearings were conducted on the same day; the hearing on the department's application preceded the periodic review hearing. Father appeals from an order entered in No. 3682 terminating his parental rights, and from an order entered in No. 3617 dismissing the abuse and/or neglect proceedings, although he filed a single notice of appeal. This court assigned one number to both appeals and in effect has consolidated father's separate appeals.

On appeal, father contends that the procedures used by the state deprived him of his due process rights under the fourteenth amendment and also under New Mexico Constitution article II, Section 18 because (1) the counsel appointed to represent him in the abuse and neglect proceeding was not given notice of the application for termination of parental rights or subsequent hearings on that application, and (2) father was not given notice of the first hearing on the merits of the application until after the hearing was completed and the court had terminated his rights. Under the circumstances of this case, we affirm, but we express concerns about the procedures utilized by the state.

BACKGROUND.

Father is the natural father of two girls. Before the filing of the abuse/neglect petition, the girls had been in the department's custody for three years. Father and mother were divorced in proceedings in which mother was given physical custody. The department's three years of custody was based on proceedings against mother. In the abuse and/or neglect proceedings against father, the state alleged his limited interest in the girls during the time they were in its custody, as well as some reported incidents of abuse and neglect.

Attorney Warren F. Frost (Frost) was appointed to represent father in the abuse and/or neglect proceedings. Father admitted neglecting the children. The court adjudicated the children to be neglected and ordered the children to remain in the custody of the department and father to comply with the treatment plan proposed by the department. Upon the first judicial review of this case in June 1988, the parties stipulated to extend the prior judgment with some modifications. The stipulated judgment reflects that the department was still making efforts to reunite the girls with father. However, in May 1988 the department filed an application to terminate father's parental rights. The court clerk opened a new case and assigned a new number to this proceeding. Frost had no knowledge of this new case, and he did not receive notification from the state.

Father was served with the petition in the new case in August and November of 1988. The summons, served on father with the petition, contained the instructions that father was required to either file a written response or appear at such time as future notices would specify and that failure to do so would result in default. We note that the summons served on father in the termination proceeding did not strictly comply with the requirements set forth in the Children's Code. *See* NMSA 1978, § 32–1–55(C) (Repl.Pamp.1989). Section 32–1–55(C) requires that the notice state specifically "that the person served must file a written response to the application within twenty days if he intends to contest the termination." The summons served on father also stated that father had a right to counsel and that the court would appoint counsel if father was indigent.

The termination matter was heard on the merits in December 1988. Father received no notice of the hearing and did not attend. The court heard evidence from three witnesses. The department requested that parental rights with regard to mother be terminated and that the court grant a continuance in the proceedings regarding father so that father would receive notice, and should father not attend, that a judgment terminating parental rights also be made against him. The court granted the department's request and continued the hearing until January to give the department another opportunity to notify father. The termination matter was set for hearing on January 5, 1989, at 10:30 a.m. Father was given notice of this hearing on December 14, 1988.

In the meantime, in December 1988, the state petitioned for a periodic review of the dispositional judgment entered in the neglect matter. *See* § 32–1–38.1. The judicial review was set for a hearing on January 5, 1989, at 11:30 a.m. Frost was notified of this hearing two days before the proceedings.

Frost's secretary was in the courthouse on January 4 and learned from the court monitor that there were two hearings involving father that would be heard the next

day. The termination hearing would be heard at 10:30 and the review of the neglect judgment would be at 11:30. This was the first Frost knew of the proceedings for termination of parental rights. Frost appeared at 10:30 and objected to the proceedings. He argued that the state's position, that he was only attorney for the neglect proceedings and not the termination, was ludicrous. He pointed out the state's position would mean that he was not entitled to participate in the termination proceedings at 10:30, at the conclusion of which the court would terminate father's rights, thus making judicial review moot in the neglect proceedings to be heard at 11:30. The state's attorney argued that father was properly notified of the termination action through service of the summons and petition containing specific instructions. Frost pointed out that, throughout the neglect proceedings, father had been counting on the attorney to represent father's interests and contact him if there was any problem. He did not, however, offer any evidence, live or by affidavit, to support this argument, nor was his request for a continuance a request for time to obtain that proof.

The court below was not persuaded by Frost's argument. It nonetheless allowed him to participate in the hearing, which was limited to presentation of the judgment terminating parental rights and brief testimony by the social worker. The social worker testified that father vacillated between wanting to relinquish his rights and wanting to assert them. She said father had very little contact with the girls and that the home study on him was negative. The social worker also testified that father made little attempt to comply with the treatment plan. The social worker acknowledged that she knew Frost represented father. The court terminated father's rights. Shortly thereafter, the neglect proceeding was held. Evidence was admitted updating the court on the children's progress and programs for them. The state requested that the case be dismissed based on the fact that father's rights had just been terminated. With no objection, the court ordered dismissal.

Frost appealed both cases on father's behalf. The department has moved to dismiss the appeal. It contends Frost cannot act for father in the termination case and, because father's rights were terminated in that case and because once his rights were terminated the neglect proceedings were properly dismissed, there is no legitimate appeal. We consider this argument unduly technical and mechanistic; we therefore deny the motion to dismiss.

We first address father's argument that his counsel was entitled to notice of the termination proceeding because he had been appointed to represent father in the neglect and abuse proceedings.

APPOINTMENT AS COUNSEL IN A NEGLECT AND ABUSE PROCEEDING: SCOPE OF REPRESENTATION.

■ The state's contention that the neglect proceedings were separate and distinct from the termination of parental rights proceedings has merit. Thus, we hold that ordinarily there is no requirement that the state serve counsel in one proceeding with papers commencing another separate and distinct proceeding. However, there may be circumstances under which the state should serve an attorney for a parent in abuse and neglect proceedings when the state then seeks to terminate that parent's rights.

■ The first proceeding is designed to adjudicate the petition for abuse and neglect, make a disposition order, and thereafter to conduct periodic reviews. The second proceeding is designed to determine whether parental rights should be terminated. Many termination cases begin as neglect cases, *see, e.g., State ex rel. Human Servs. Dep't v. Cynthia Y.,* 106 N.M. 406, 744 P.2d 181 (Ct.App.1987); however, a termination proceeding does not necessarily follow a neglect proceeding. A termination proceeding is not dependent on a prior adjudication of neglect. *State ex rel. Human Servs. Dep't v. Ousley,* 102 N.M. 656, 699 P.2d 129 (Ct.App.1985).

■ The purposes and the remedies for the two proceedings are different. *State ex rel. Human Servs. Dep't v. Le-*

*vario*, 98 N.M. 442, 649 P.2d 510 (Ct.App. 1982). In the disposition hearing of a neglect proceeding, immediately relieving the harmful situation and implementing a remedial treatment plan is the central focus. NMSA 1978, § 32–1–34(A), (B), (C) (Repl. Pamp.1989). In the termination proceeding, on the other hand, a permanent end to the parent/child relationship is sought to allow the child to become available for adoption. *See* NMSA 1978, §§ 32–1–54, –55 (Repl.Pamp.1989); *cf.* NMSA 1978, §§ 32–1–58, –59 (Repl.Pamp.1989).

█ The evidence supporting an adjudication of neglect may be the same as that for termination. One of the bases for termination of parental rights is a finding that the child is neglected. § 32–1–54(B)(3). Thus, evidence of neglect is required. However, the statute further requires a finding "that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future." *Id.* Therefore, evidence of the parent's inability to improve parenting techniques is also required for termination.

The separate nature of the proceedings in this case is also apparent from the petitions. In the petition for adjudication of abuse and/or neglect, father was the only respondent. In the termination petition, father and mother were both respondents.

The interests of the parties, and thus the function of the attorneys in the two proceedings, have both similarities and differences. In both proceedings, the function of the attorney is to help the respondent refute damaging evidence of abuse or neglect. However, in the neglect proceeding, the attorney may advise the client that it is in his or her best interest to work with the department and thus stipulate to the neglect. *See* NMSA 1978, § 32–1–31(F) (Repl.Pamp.1989). In addition, the attorney may assist in advising the client concerning his or her responsibilities under the treatment plan. *See* § 32–1–34(C). The attorney may also see to it that visitation rights are afforded the client as allowed by statute. *See* § 32–1–34(D).

The interest of the client in the termination proceeding is ordinarily to keep the children. In this circumstance, the role of the attorney is more adversarial toward the petitioner. His or her job would not only be to refute evidence of abuse and neglect, but also to refute evidence that conditions are unlikely to change.

Thus, because the proceedings are separate and distinct, we cannot agree with Frost that the department was required to give him notice of the termination proceedings because he represented father throughout every stage of the proceedings involving the parent/child relationship. *See State ex rel. Human Servs. Dep't v. Ousley.* Nor, however, can we agree with the state that it was not required to serve Frost under any circumstances.

█ We consider it noteworthy that father did not file any motions attacking the judgment, *e.g.,* SCRA 1986, 1–060(B), and, accordingly, there was no evidence presented to support the implication underlying father's contentions. The implication was that he was relying on Frost to protect his rights in any proceedings relating to the children. While Frost argued this at the hearing below, we have repeatedly held that argument of counsel is not evidence and does not establish facts. *State v. Jacobs,* 102 N.M. 801, 701 P.2d 400 (Ct.App. 1985); *Phillips v. Allstate Ins. Co.,* 93 N.M. 648, 603 P.2d 1105 (Ct.App.1979).

█ Thus, in this case, we do not have a record to support a claim that father was relying on Frost to protect his rights, and therefore the state should have served Frost. Accordingly, we reject father's first issue. However, the state could be jeopardizing the finality of judgments terminating parental rights by not serving the attorney under circumstances where it could be shown that the abuse and neglect case and the application for termination of parental rights are closely intertwined and where the parent is in fact relying on counsel to protect his or her interests in both cases.

Finally, we have reviewed the criminal law cases on which father relies and do not believe they support any requirement that an attorney appointed in one action should

be considered the attorney in another action. We next discuss father's contention that he was denied due process because he was not given notice of the December hearing at which his parental rights were conditionally terminated.

## DENIAL OF DUE PROCESS IN CONNECTION WITH THE APPLICATION TO TERMINATE PARENTAL RIGHTS.

■ If we assume that father was not entitled to Frost's representation at the January termination hearing, father's second issue is without merit. The December hearing was continued because the court recognized that father was not given notice. Father does not contend that he lacked notice of the January hearing. In fact, as already noted, he was given notice of that hearing. Father never answered the application to terminate parental rights nor showed up at the hearing of which he had notice. Thus, he was in default with respect to the application to terminate parental rights, and the children's court did not err in granting the department's application.

Again, however, we must point out that there is no evidence in this case that father failed to attend the hearings in the termination case because of his reliance on counsel. Similarly, there is no showing that father did not attend the hearings in the termination case because of various errors in the papers notifying him of the case or of the hearings.

■ Although we share Judge Donnelly's concern over the error in the wording of the summons as well as various technical or occasionally clerical errors that occurred, we note that the defense of lack of jurisdiction over the person is waived if it is neither made by motion nor included in a responsive pleading. *See* SCRA 1986, 1–012(H)(1) (Cum.Supp.1989). Further, father does not rely on any of these errors to argue on appeal that his due process rights were violated, and it does not appear that father relied on any of them in moving for a continuance. We have been admonished by the supreme court not to consider issues not raised in the trial court or briefed on appeal. *See State ex rel. Human Servs.*

*Dep't v. Staples,* 98 N.M. 540, 650 P.2d 824 (1982); *New Mexico Dep't of Human Servs., Income Support Div. v. Tapia,* 97 N.M. 632, 642 P.2d 1091 (1982). Finally, because there was no post-judgment motion hearing at which father presented evidence, there is no showing that any of these errors had any effect on father's default. To be reversible, error must be prejudicial. *State v. Wright,* 84 N.M. 3, 498 P.2d 695 (Ct.App.1972). However, had father established prejudice by evidence presented to the children's court, that court may well have been required to vacate its judgment. Thus, we caution the department that, although father has not established prejudice in this case, inattention to detail can jeopardize the finality of judgments, and the errors that occurred in this case should be avoided in future cases.

Nevertheless, on the record before us, we are not persuaded that fundamental error has occurred, nor are we persuaded that father's fundamental rights were violated. Under these circumstances, the judgments of the children's court should be affirmed.

The court requested oral argument in this case and, as an experiment, scheduled a telephone conference call. The purpose of this procedure was to save parties with few resources the expense of long-distance travel. At the conference, each of the panel members and counsel was identified. Each counsel had the opportunity, without interruption, to state his or her respective position. Each member of the panel then directed questions to counsel. Counsel not involved in that questioning were later given the opportunity to respond. The panel wishes to express its appreciation to counsel for participating in this experiment and for the candor with which each answered the court's questions.

## CONCLUSION.

The judgments of the children's court are affirmed.

IT IS SO ORDERED.

BIVINS, C.J., concurs.

DONNELLY, J., dissenting.

DONNELLY, Judge (dissenting).

I respectfully dissent. I would reverse both the parental termination action, and dismissal of the periodic review proceedings, and remand both causes back to the children's court to permit the father an adequate opportunity to be heard on the merits.

The facts indicate the proceedings in both actions did not conform with requisite due process. The state filed suit (Case No. 1) against the father and mother alleging neglect or abuse of the children. At the time Case No. 1 was filed the parents had been divorced and the children were in the custody of the mother. The court found the father to be indigent and appointed an attorney, Warren Frost (Frost), to represent him. Following a hearing, the court found the children to be neglected, but entered an adjudicatory order finding in part, that "[t]he children should be returned to [the father] if he reasonably complies with the Department's treatment plan and demonstrates that he is able to properly care for the children." The court also directed that periodic review proceedings be held as required by NMSA 1978, Section 32–1–38.1 (Cum.Supp.1988).

During the pendency of Case No. 1, on May 24, 1988, the state filed a second action (Case No. 2) to terminate the father's parental rights. On June 29, 1988, approximately one month after it filed Case No. 2, the state together with the father and the father's attorney agreed to entry of a stipulated judicial review order in Case No. 1, approving a new treatment plan which the parties agreed was designed to assist the father and to return the children to his custody. Unknown to the father's attorney, at this same time the state was proceeding independently in Case No. 2 to terminate the father's parental rights. On August 11, 1988, slightly over one month after stipulating to the new treatment plan in Case No. 1, the state requested a hearing in Case No. 2 to terminate the father's rights. No notice was ever given by the state to Frost in Case No. 1 informing him of its action to terminate the father's parental rights in Case No. 2, despite the fact

that the state alleged in its petition in Case No. 1 that the father was of "limited intelligence" and "limited intellect," and the grounds relied upon in the two proceedings were substantially the same.

On December 29, 1988, the state mailed a notice to the father's attorney in Case No. 1, informing him that a six-month review hearing would be held on January 5, 1989, at 11:30 a.m. No notice was given to the father's attorney that a hearing to terminate the father's parental rights in Case No. 2 was also scheduled an hour earlier on the same day so as to render Case No. 1 moot.

The father argues on appeal that the failure to give his attorney any notice in Case No. 1 of the existence of the state's efforts to terminate the father's parental rights in Case No. 2 was contrary to fundamental fairness and deprived him of due process. I agree.

One day prior to the January 5, 1989 termination hearing, Frost learned by chance of the existence of Case No. 2. He appeared at the hearing in Case No. 2 and moved for a continuance stating:

I don't understand what the rationale [for not notifying me] could be when the Department knows that I've represented [the father] for the last 18 months and not informing me that in fact that they have filed a petition for termination so that I may properly represent my client. * * *

The state objected to Frost's standing in Case No. 2 to represent the father. The court denied Frost's motion for continuance, found that he did not represent the father in Case No. 2, and entered an order terminating the father's parental rights. An hour later at the periodic review hearing in Case No. 1, the court dismissed Case No. 1, ruling that the case was now moot because in Case No. 2 it had previously terminated the father's parental rights.

Following this hearing, on January 5, 1989, the court entered an order in Case No. 2, terminating the father's parental rights, finding in part:

3. [The father] was duly notified of this action and served with process personally on November 16, 1988.

4. *By terms of said service, Respondents were to file a responsive pleading within 20 days ... from the date of service for [the father].*

5. No entry of appearance or written response has ever been filed by either respondent.

\* \* \* \* \* \*

14. Respondents are in default. [Emphasis added.]

The state argues that attorney Frost was not entitled to notice of the proceedings in Case No. 2 because the state had personally served the father and the father failed to file a timely written response and was in default. The trial court, acting upon the belief that the father was in default, entered the termination order. The trial court's findings and order, however, were influenced by a material mistake of fact because the summons served on the father in Case No. 2 did not comply with the statutory requirements of NMSA 1978, Section 32–1–55(C) (Repl.1986). The latter statute directs that *"[t]he notice shall state specifically that the person served must file a written response * * * within twenty days.  * * * "* § 32–1–55(C) [emphasis added]. The summons served on the father did not follow the statute and stated he could avoid default by filing a written response within 20 days, *"or appear at such time as future notices specify* [.]" [Emphasis added.] The plain wording of the summons indicated that the father had a choice of either filing a written response or appearing when notified in the future. Despite this error in the wording of the summons, as shown by the court's findings the father was nevertheless defaulted for not filing a timely responsive pleading.

The court held a hearing on October 24, 1988 in Case No. 2. No notice was given to Frost of this hearing. The court entered an order in Case No. 2 stating that it was continuing the proceedings until December 7 and 8, 1988. The state then proceeded to re-serve the father on November 16, 1988,

with a new copy of the summons and application for termination of parental rights in Case No. 2. The language of the new summons contained the same material defects as the first.

At the December 7, 1988 hearing in Case No. 2, the state told the court that it had failed to send any notice to the father informing him of the December hearing. This hearing was held less than thirty days after service had been made on the father on November 16, 1988, contrary to Section 32–1–55(G). The latter statute provides that "[t]he hearing date [on an application for termination of parental rights] shall be at least thirty days after service is effected upon the parents of the child or completion of publication." § 32–1–55(G). Although the state had previously served the father prior to November 16, its reservice of the father in November had the effect of instructing the father he had twenty additional days to respond to the petition or that he could "appear at such time as future notices specify."

Despite the state's admission to the court that it had not given the father any notice of the December 7 hearing, the court entered an order terminating the father's rights, but stated that the December 7, 1988 hearing "shall be continued for a reasonable period of time to provide [the father] *with adequate notice of hearing;* if at that time [he] fails to appear or respond, this Judgment terminating his parental rights shall become effective." [Emphasis added.] On December 14, 1988, the state attempted to comply with the court's order requiring additional notice and mailed a notice of hearing in Case No. 2 to the father. This notice, however, was materially defective because it erroneously stated that the date scheduled for the new hearing was January 5, 198*8* [sic], at 10:30 a.m. (emphasis added). No notice of the hearing in Case No. 2 was sent to Frost.

On December 29, 1988, the state requested that the court set a date for the periodic review hearing in Case No. 1. The court set the hearing seven days later for January 5, 1989, at 11:30 a.m., and one hour after the scheduled termination hearing in

Case No. 2. Written notice of the hearing in Case No. 1 was mailed by the state to Frost's office on December 29, 1988. This notice failed to comply with the provisions of Section 32–1–38.1(B), which requires that *"twenty days' written notice to all parties [shall be given] of the time, place and purpose of any judicial review hearing held pursuant to Paragraphs (1) and (2) of Subsection A of this section."* [Emphasis added.]

In addition to the time requirement for notices imposed by Section 32–1–38.1, the state was subject to the terms of a consent decree which ordered, among other things, that "[s]o long as Section 32–1–38.1 * * * remains in effect * * * [the] natural parents * * * shall receive adequate written notice of the [review] proceedings." *Joseph A. by Wolfe v. New Mexico Dep't of Human Servs.*, 575 F.Supp. 346, 359 (D.N.M.1983). Under the circumstances, the state's noncompliance with Section 32–1–38.1(B), and its failure to advise Frost of the proceedings in Case No. 2, did not constitute adequate notice in either case.

Parental termination proceedings involve matters of fundamental importance. *State ex rel. Dep't of Human Servs. v. Natural Mother*, 96 N.M. 677, 634 P.2d 699 (Ct.App. 1981). The father's parental rights should not be terminated under the circumstances existing here. While I agree with the majority that abuse or neglect cases may be distinct from termination cases, where, however, substantially the same grounds are relied upon in both actions, the state has alleged that the father is of "limited intelligence" and an attorney has been appointed to represent the father in the first action, and the state has stipulated to an order agreeing to return the children contingent with the father's compliance with a court-ordered parenting plan, but the state has failed to give notice to the attorney appointed to protect the father's rights in the first action that it is simultaneously proceeding to terminate the father's rights in a second suit, the result violates fundamental fairness. *See Rogers v. State*, 94 N.M. 218, 608 P.2d 530 (Ct.App.1980) (notice held insufficient to satisfy statutory requirements).

Procedural due process in termination proceedings necessitates that adequate notice be given to parents of the issues to be determined and a reasonable opportunity to prepare and be heard thereon. *See In re Laurie R.*, 107 N.M. 529, 760 P.2d 1295 (Ct.App.1988); *In re Doe*, 99 N.M. 517, 660 P.2d 607 (Ct.App.1983); *see e.g., In re Downs*, 82 N.M. 319, 481 P.2d 107 (1971). A parent's right to custody is constitutionally protected and should not be terminated except upon a showing that the proceedings substantially complied with statutory notice requirements and are commensurate with due process of law. *See Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *see also Sweetser v. Sweetser*, 7 Kan.App.2d 463, 643 P.2d 1150 (1982) (order terminating father's parental rights held invalid where the notice failed to adequately apprise him of the nature of the action to be taken and a right to be heard). In order to terminate parental rights the grounds relied upon must be proven by clear and convincing evidence. § 32–1–55(H). Notice and procedural requirements for terminating parental rights are no less important. *See Fulton v. Cornelius*, 107 N.M. 362, 758 P.2d 312 (Ct.App. 1988) (actions in the nature of a forfeiture will be closely scrutinized and strictly construed).

I disagree that the father's attorney was not entitled to notice of the proceedings in Case No. 2 under the circumstances herein. Nor am I able to agree that Frost after his accidental discovery of the existence of the second action, and requesting a continuance in order to protect the father's interests, has waived any objection to the substantive defects contained in the summons and the other numerous errors herein. Denial of the request for continuance under the circumstances herein, considering the state's challenge to Frost's right to appear in Case No. 2, and when viewed in light of lack of notice and the multitude of serious errors existing here, amounted to a denial of due process and was contrary to fundamental fairness. *See In re Downs.* I would reverse both the order terminating

his parental rights and the order dismissing
Case No. 1.