797 P.2d 243

**In the Matter of the Termination of Parental Rights of RONALD A., Respondent, with Respect to Rhonda A. and Tanya A., Children.**

RONALD A., Petitioner,

v.

**STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT, Respondent.**

No. 19122.

Supreme Court of New Mexico.

July 16, 1990.

Rehearing Denied Aug. 31, 1990.

Rowley, Parker & Frost, Warren F. Frost, Clovis, for petitioner.

John E. DuBois, Gen. Counsel, Susan K. Rehr, Asst. Gen. Counsel, Human Services Dept., Santa Fe, M. Elizabeth Price, Children's Court Atty., Human Services Dept., Clovis, for respondent.

Quinn & Quinn, Donna Quinn, Clovis, Guardian Ad Litem.

## OPINION

SOSA, Chief Justice.

"[W]hen notice is a person's due, process which is a mere gesture is not due process." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). That statement by the Supreme Court aptly summarizes the treatment accorded petitioner in the case before us. He asks us to reverse the court of appeals, which held that the Human Services Department was not required to serve petitioner's attorney with notice of the Department's action to terminate petitioner's parental rights, when the attorney was representing him in a separate neglect action before the children's court. We agree with petitioner that the majority opinion by the court of appeals is wrong and that Judge Donnelly's dissenting opinion is right. Thus we reverse the court of appeals and remand the case to the district court with instructions (1) to vacate its order terminating petitioner's parental rights and (2) to conduct any further hear-

ings affecting petitioner's parental rights in such a way as not to be inconsistent with our opinion herein.

Both the majority and dissenting opinions in *Ronald A. v. State of New Mexico, ex rel. Human Services Department*, 110 N.M.App. 228, 794 P.2d 371 (1990), thoroughly set forth the facts underlying this controversy, and thus we shall not set forth those facts here. The holding that Judge Donnelly unsuccessfully urged upon the majority is as follows:

> While I agree with the majority that abuse or neglect cases may be distinct from termination cases, where, however, substantially the same grounds are relied upon in both actions, the state has alleged that the father is of "limited intelligence" and an attorney has been appointed to represent the father in the first action, and the state has stipulated to an order agreeing to return the children contingent with the father's compliance with a court-ordered parenting plan, but the state has failed to give notice to the attorney appointed to protect the father's rights in the first action that it is simultaneously proceeding to terminate the father's right in a second suit, the result violates fundamental fairness.

*Id.* at 236, 794 P.2d at 379.

█ We agree entirely with Judge Donnelly's statement and adopt it as our holding here. A parent's right in custody is constitutionally protected, *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), and actions to terminate that right must be conducted with scrupulous fairness, including the providing of fair notice to the parent(s). *See In re Laurie R.*, 107 N.M. 529, 534, 760 P.2d 1295, 1300 (Ct.App.1988) ("Procedural due process requires notice to each of the parties of the issues to be determined and opportunity to prepare and present a case on the material issues.").

█ Here, the notice that the Department gave to petitioner was defective in that it advised him that he could respond to the summons in one of two ways: either by filing a written response within 20 days or by appearing "at such times as future notices specify." This notice did not track the applicable statute and appeared to give petitioner options he did not have; it was therefore misleading. Even had the notice not been defective, however, we still would conclude that the Department should have served notice on the attorney who represented petitioner in the related neglect case.

Owing to the fact that petitioner was relying entirely on his attorney to handle his neglect case, petitioner rightly could have assumed that his attorney was being duly notified of all hearings and any further proceedings in the layperson's mind. Petitioner's right to a fair hearing in the termination proceeding, including representation by counsel who had been notified of the proceeding, should not have been bartered against his capacity to probe through the intricacies of a court system he doubtless did not comprehend.

Thus, "notice to the parties" in this instance includes notice to petitioner's attorney. While petitioner's attorney had not been appointed to represent him in the termination case and thus was not petitioner's attorney of record in that case, given the context of this proceeding as summarized by Judge Donnelly's statement quoted above, notice nonetheless should have been given to the attorney both of the Department's action to terminate petitioner's parental rights and of all hearings related thereto.

The Department's conduct in this case was, at best, unprofessional, and deprived petitioner of his right to be accorded procedural due process in the proceeding brought against him to terminate his parental rights. Such a proceeding should be conducted openly, with the widest possible disclosure of the Department's intentions given to all concerned parties so that a parent's custodial rights may be adjudicated only after full notice to the parent— and to the parent's legal representative in any case pertaining to the same child.

Instead, the Department in this case conducted itself as if it were involved in a poker game, holding its cards close to its

chest. On the one hand the Department led petitioner and his attorney to believe that petitioner could redeem himself and be restored to his parental rights by complying with the court-ordered treatment plan in the neglect case. On the other hand the Department hid from petitioner and his attorney the fact that it already had filed an action to terminate petitioner's parental rights even as it negotiated with petitioner in the neglect case.

Deviousness of this type might be appropriate in diplomatic wrangling between nations hatching secret plots to wage war on one another, but it is highly inappropriate in a setting where constitutional due process is mandated. Instead of seeking, in effect, to make petitioner's day in court as fraught with peril as possible, the Department should have exerted every effort to ensure that petitioner's hearing was conducted fairly and in the full light of day, with maximum access to the proceeding being afforded him by notification to his court-appointed counsel in the neglect case.

We feel that the court of appeals' description of the role of prosecuting attorneys is applicable by analogy to the role of the Human Services Department in proceedings to terminate parental rights:

> [T]he prosecutor is a public officer with duties quasi-judicial in nature. His obligation is to protect not only the public interest but also the rights of the accused. In the performance of his duties he must not only be disinterested and impartial but must also appear to be so.
>
> \*     \*     \*     \*     \*     \*
>
> He must observe limits of essential fairness in his work \* \* \*.

*State v. Hill*, 88 N.M. 216, 219, 539 P.2d 236, 239 (Ct.App.1975).

■ The same standard applies to attorneys working for the Human Services Department who are prosecuting a proceeding to terminate parental rights. They must seek not only to protect the children involved; they must see to it also that the parents are dealt with in scrupulous fairness. Here nothing would have been lost by the Department's serving notice of the termination proceeding on petitioner's attorney in the neglect case. If the Department is to err, we believe it should err on the side of caution and prudence rather than by adhering mechanically to rules of procedure that, when taken to an extreme, can bring prejudice to a party whose rights are being challenged in a legal proceeding the full import of which he may not understand.

Although we criticize the Department's handling of this case, we note that in the last analysis it is the trial court that is responsible to afford due process to the father, as well as to other litigants. The trial court was remiss in not thoroughly reviewing the case prior to the first hearing in order to assure that the father's due process rights were being protected at that hearing. A speedy rush to judgment in the first hearing made the second hearing unnecessary as moot—at least in the opinion of the trial court. Technically, the second hearing *was* moot, but only because the father had been denied his right to procedural due process in the first hearing. A too-rapid handling of cases that appear routine must not intervene in our system of justice to prevent our trial courts from investing the requisite time and energy to assure that all parties are accorded the procedural due process that is their due under our state and federal constitutions.

We need not extend Judge Donnelly's proposed holding past the facts of this case, but we recommend to the Department that in future proceedings in which the child-custody rights of parents are being contested the Department provide full and fair notice to all interested parties, including counsel who may represent the parties in collateral actions, even though counsel may not be considered by the Department strictly entitled to such notice. The Department should remember that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Armstrong v. Manzo*, 380 U.S. 545, 550, 85

S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965) (failure to notify divorced father of adoption proceedings deprived him of due process of law) (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. at 314, 70 S.Ct. at 657) (emphasis added). Here, "under all the circumstances" of this case, notice to petitioner of the pendency of a parental termination proceeding should have included notice to his court-appointed counsel in the pending neglect case.

For the foregoing reasons the judgment of the district court terminating petitioner's parental rights is reversed, and the cause is remanded for further proceedings as outlined above.

IT IS SO ORDERED.

RANSOM, J., concurs.

MONTGOMERY, J., specially concurs.

MONTGOMERY, Justice (specially concurring).

I concur in the result. There can be no doubt that petitioner's due process rights were violated by the district court's failure to "accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law." SCRA 1986, 21–300 A(4) (Repl.Pamp.1989). The *court* terminated petitioner's parental rights without permitting *court-appointed* counsel in a closely related matter to represent his client fully in both the termination and the neglect proceedings. The *court* did not allow a continuance to insure that the petitioner, who was not present and was technically unrepresented, would have notice. Actually, in this instance the *court* was aware that petitioner lacked meaningful notice and yet it terminated his parental rights.

While the plurality opinion recognizes that the failure to safeguard petitioner's rights rests ultimately with the court, the opinion heaps much criticism on the Human Services Department. I do not share the view, nor do I think the facts in this case warrant even an inference, that the failure to provide due process should be attributed to "unprofessional" behavior or any intentional conduct on the part of the Human Services Department. It is true, in my opinion, that the Department attorney owes some duty to a parent in circumstances such as those presented here. The role of the Human Services Department attorney is sometimes like that of a criminal prosecutor, as the plurality points out. Yet in many profound ways the roles of such attorneys are very different. The Human Services Department attorney constantly serves many masters and must balance conflicting responsibilities to "client" (the client being at various and the same times the state, the agency, the children, and in some ways perhaps even the parent) against the rights of third persons, rights so numerous and subtle that they are too "impractical to catalogue." SCRA 1986, 16–404, ABA Comment (Repl.Pamp.1988). When rights are too numerous to catalogue, and duties on attorneys are open to interpretation, we should be circumspect in describing an attorney's conduct as, "at best, unprofessional."

It is enough for me that there was a failure in this case to accord petitioner due process. We need not ascribe blame for this failure. With that reservation, I concur with the plurality's opinion.