This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38327**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

      Petitioner-Appellee,

v.

**JOSHUA L.,**

      Respondent-Appellant,

**IN THE MATTER OF ITALIANA G.
and JOSEPH L.,**

      Children.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
John J. Romero, Jr., District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Allison P. Pieroni
Albuquerque, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** Joshua L. (Father) appeals the termination of his parental rights to J.L. and I.G. (collectively, Children). We affirm.

**BACKGROUND**

**{2}** Children, Youth & Families Department (CYFD) received a referral claiming that Father neglected Children and that Children's grandmother (Grandmother) physically abused them. At the time, Children lived with Grandmother, though she was not their primary caretaker. Father did not live in the same home. Children were placed into CYFD custody by an Albuquerque Public School Police Department detective. Three days later, CYFD held a Family Centered Meeting at which Grandmother and Father were present. At the meeting, threats identified by CYFD were discussed, including physical abuse of Father by Grandmother which was also witnessed by Children. CYFD considered providing in-home services to prevent Children's removal from the home, but determined that this option was inappropriate.

**{3}** CYFD filed a Neglect/Abuse Petition (Petition) against Father and Grandmother. CYFD requested that Children remain in its legal custody, and the district court entered an order to this effect. Father was appointed legal counsel for the district court proceedings. The district court held a custody hearing where Father appeared with court-appointed counsel. Over Father's court-appointed counsel's objection, the district court ordered Father to participate in alcohol and drug testing.

**{4}** The district court scheduled an adjudicatory hearing. Father appeared for the hearing with an attorney who was substituting for his court-appointed counsel. At the hearing, substitute counsel requested that the district court continue the proceedings because Father expressed his desire to retain private counsel, though she indicated that she was prepared to go forward if the district court wished to proceed. The district court substantively commenced the adjudicatory hearing, but agreed to continue the hearing to a later date. CYFD's investigator testified at the hearing. Based on the investigator's testimony, the district court found that there was "sufficient evidence . . . to put the matter in controversy" such that the adjudication should move forward. Finally, the district court provided Father a timeframe in which to retain private counsel so as to avoid further delay.

**{5}** On the first day of the continued adjudicatory hearing, Father was again represented by the substitute counsel who represented him at the initial adjudicatory hearing. CYFD's investigator resumed her testimony. The investigator testified that at the Family Centered Meeting, Father acknowledged that though he knew Grandmother was physically abusing Children, he continued to place them in her care, and stated that while he did not like Grandmother hitting Children, he did not believe it was wrong. The investigator further testified that at the meeting, Father was tested for alcohol and drugs,

and that the test was positive for alcohol and THC. Finally, she testified that CYFD spoke to Father about options to remove Children from Grandmother's home, but Father was not receptive.

{6}     The assistant principal of Children's school testified that Father's daughter, I.G., disclosed that she witnessed Grandmother "beat up" Father, and that there was a great deal of arguing in Children's home. I.G. also disclosed to her that Grandmother blamed I.G. for food going missing in the home. The assistant principal further testified that Father confirmed Grandmother's abuse of him and that he was aware that I.G. witnessed this abuse. Finally, the assistant principal testified that I.G. took a piece of yarn from her classroom and attempted suicide by placing the yarn around her neck and that Grandmother and Father were unresponsive to the school's phone calls concerning this event.

{7}     A school counselor testified that on the day Children were taken into CYFD custody, I.G. and Father disclosed to her that Grandmother hit both of them. The detective that placed Children in CYFD custody testified that during an interview following I.G.'s placement into CYFD custody, she disclosed that Grandmother used a clothes hanger and a belt to hit her. In addition, I.G. stated that Grandmother also hit Father's son, J.L. J.L. testified that Grandmother "hit" and "scream[ed]" at Children and that Father did "not really" do anything to stop her. J.L. further testified that during a visit with Father at CYFD, Father said "a lot of bad stuff" to him, that he did not wish to have visits with Father or Grandmother and that he would not feel safe living with either of them.

{8}     Near the close of the first day of the continued hearing, Father expressed his desire to proceed pro se. The district court denied Father's request and reminded him that the court had set a deadline for Father to retain private counsel, which he did not do. Father was given time to consult with counsel, and he testified.

{9}     The following day, Father appeared with another substitute attorney. Father communicated his approval to proceeding with substitute counsel. Grandmother was the final witness to testify. The district court found that CYFD proved by clear and convincing evidence that Father neglected Children and that Grandmother abused and neglected Children. CYFD then moved to dismiss Grandmother from the proceedings without disposition. Father's substitute counsel voiced objection to Grandmother's dismissal and requested that, if the district court was inclined to dismiss Grandmother, it proceed with Father's disposition at a later date so that Father's original court-appointed counsel could argue on Father's behalf. The district court granted CYFD's motion to dismiss Grandmother from the proceedings, and postponed Father's dispositional hearing in order for Father to meet with his original court-appointed counsel and have that counsel present at the hearing.

{10}    At the dispositional hearing, Father appeared with his original court-appointed counsel. CYFD informed the district court that it wished to amend the goal of the permanency plan from reunification to adoption, because Father had made "no

progress" in the services in which he was participating and, according to his service providers, would never be able "internalize the information" he was receiving from those services. Children's guardian ad litem concurred with CYFD's position, and informed the district court that Children were averse to reunification and that J.L. threatened suicide if he was reunited with Father. Father's court-appointed counsel took issue with CYFD's characterization of Father's performance in the services in which he was participating, voiced opposition to changing the plan by arguing that such a change was precipitous, and expressed his desire to avoid the termination of Father's parental rights. The district court amended the goal of the permanency plan to adoption, entered an adjudicatory judgment reflecting its finding that Father neglected Children, and stated that CYFD was still compelled to provide services to Father.

{11} The district court held a judicial review hearing where Father appeared with his court-appointed counsel. Father's court-appointed counsel requested that the court continue the hearing because Father again indicated that he wished to hire private counsel. The district court denied this request, explaining that Father had previously indicated he was retaining private counsel and never did so. Father's court-appointed counsel noted that he met with Father to discuss objections to CYFD's judicial review report, and he presented those objections to the court. The district court adopted CYFD's judicial review report, and entered an order stating that Father had made "no progress" in his case plan. Father retained private counsel shortly thereafter.

{12} The district court held an initial permanency hearing where Father appeared with private counsel. CYFD detailed the services Father was receiving, including: counseling, a referral to vocational rehabilitation, drug screenings, and family visits, though the visits were suspended. CYFD further informed the court of the following: Father was discharged from counseling for arriving to sessions intoxicated and making improper remarks, his participation in drug screenings was not consistent, he was "unduly dependent" on Grandmother, he was "inappropriate" at family visits, his home was unsafe and unsanitary, he did not attend appointments for Children, he failed to pursue a referral for psychiatric services, and he failed to provide proof of participation in substance abuse treatment. Father's private counsel disputed much of the information CYFD provided the court, and discussed Father's efforts to comply with his case plan. Children's guardian ad litem again informed the court that Children were averse to reunification with Father. The district court found that Father had made "no progress" in his case plan. CYFD moved to terminate Father's parental rights to Children three days later.

{13} Father appeared with his private counsel at a subsequent permanency hearing. CYFD again detailed the services Father was receiving, and noted that Father's deficiencies in case plan progress were largely unchanged since the prior permanency hearing. Father's private counsel again disputed CYFD's account of Father's progress on his case plan, and conveyed Father's desire to have the goal of the case plan be changed back to reunification from adoption. The court found that Father had made "no progress" in his case plan.

**{14}** Father appeared with his private counsel at the termination of parental rights trial. Additionally, an out-of-state attorney appeared on Father's behalf, whom the district court ruled could advise and consult Father's private counsel throughout the trial. Father's private counsel began his case by informing the district court that he had spent time with Father "over . . . several months" as the case progressed. The following evidence was presented at the trial.

**{15}** Over objection voiced by Father's private counsel, Father's counselor testified as an expert in counseling. She consulted with CYFD to identify Father's counseling needs and referred Father to other counseling providers specific to domestic violence. Father was not interested in in-patient treatment, though his counselor suggested it. She also spoke to Father about his harmful dependence on Grandmother. Father twice came to counseling "inebriated," which caused him to make "vulgar" and "inappropriate" physical advances toward his counselor, which resulted in his counseling being terminated.

**{16}** Over objection voiced by Father's private counsel, Father's therapist testified as an expert in social work. She provided Father counseling for parenting, substance abuse, and domestic violence, based on a referral from CYFD. Father attended group counseling sessions, but was placed in individual sessions because he engaged in troublesome behavior. Father's therapist discussed the domestic violence Father endured from Grandmother, and the need for Father to cease living with Grandmother. She felt that the division of vocational rehabilitation was "a more appropriate agency" to provide services to Father, and he was referred to and accepted there. Father subsequently ceased contact with his therapist and discontinued utilizing the counseling services she offered to him. Father's therapist described his progress in counseling as "limited."

**{17}** Father's parenting coach testified that Father did not complete all of his parenting classes and that Father was unengaged during a portion of these classes. She supervised Father's visits with Children at CYFD. One of Father's visits was terminated early because of improper and racist remarks in Father's dialogue with I.G. Father's parenting coach ceased working with Father because she felt Father's needs were broader than the scope of services she could provide, though she felt things would have been different if Father was not subject to Grandmother's control.

**{18}** Children testified that Father could not care for them and they would rather live with their aunt. Children's therapist testified as an expert in mental health counseling, though Father objected to her expert designation through his private counsel. She testified that Children did not want to live with Father because they feared contact with Grandmother, and that J.L. made credible threats of suicide when discussing returning to Father's care.

**{19}** Finally, Father's permanency planner from CYFD testified that she met with Father monthly, more than a dozen times, to discuss his case and the services he was receiving. At the outset, the meetings were held at Father's home. During that time, she became aware that Father was residing at Grandmother's home in the evenings.

Grandmother began appearing at Father's meetings with the permanency planner at his home and prohibited Father from speaking, was otherwise disruptive, and made the meetings "unsafe," though she was no longer a party to the case. After unsuccessfully warning Father that Grandmother could not be present at the meetings, the permanency planner discontinued the meetings at Father's home. Finally, the permanency planner testified that Father was entirely or partially disallowed from continuing treatment at four separate service providers.

{20}     The district court found that CYFD demonstrated through clear and convincing evidence that the circumstances underlying Father's neglect of Children were not likely to change notwithstanding CYFD's reasonable efforts to aid Father in changing those circumstances, and entered a judgment terminating Father's parental rights. Father now appeals.

**DISCUSSION**

{21}     On appeal, Father contends that (1) CYFD did not prove by clear and convincing evidence that it made reasonable efforts to reunify him with Children; (2) his counsel throughout the proceedings in the district court offered ineffective assistance; and (3) this ineffective assistance offended his right to due process. We address each argument in turn.[1]

**I.     Clear and Convincing Evidence Supports the District Court's Finding That CYFD Made Reasonable Efforts to Reunify Father With Children**

{22}     CYFD brought its motion to terminate Father's parental rights pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005), which states, in relevant part:

> The court shall terminate parental rights when . . . the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by [CYFD] or other appropriate agency to assist the parent in adjusting conditions that render the parent unable to properly care for the child.

CYFD bore the burden of proving the bases set forth in its motion by clear and convincing evidence. *See* NMSA 1978, § 32A-4-29(I) (2009). "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Joseph M.*,

---

[1]Father also raises issues pursuant to *State ex rel. Children, Youth & Families Dep't v. Alicia P.*, 1999-NMCA-098, 127 N.M. 664, 986 P.2d 460. While we recognize appellate counsel's obligation to raise Father's contentions, we do not address them, as this aspect of Father's appeal is devoid of citations to the record and legal authority, and is not fully briefed. *See State ex rel. Children, Youth & Families Dep't v. Senaida C.*, 2008-NMCA-007, ¶ 27, 143 N.M. 335, 176 P.3d 324 (recognizing the duty of appellate counsel to raise issues pursuant to *Alicia P.* but declining to address them because the "issues [were] not briefed" and the appellant did not include "proper citations to the record and relevant authority").

2006-NMCA-029, ¶ 15, 139 N.M. 137, 130 P.3d 198 (internal quotation marks and citation omitted).

**{23}** Our review is limited to ascertaining "whether, viewing the evidence in the light most favorable to the prevailing party, the fact finder could properly determine that the clear and convincing evidence standard was met." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 3, 120 N.M. 463, 902 P.2d 1066. In undertaking our review, "this Court may not reweigh the evidence." *Id.* Therefore, our task is to determine whether the result below "is supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 22, 132 N.M. 299, 47 P.3d 859 (internal quotation marks and citation omitted).

**{24}** Father argues that CYFD did not prove by clear and convincing evidence that it made reasonable efforts to reunify him with Children. Specifically, Father contends that "[t]here was not clear and convincing evidence . . . to indicate that CYFD took action on its own to exclude Grandmother from family life, or to advise Father to do so or face . . . termination of parental rights." We disagree.

**{25}** In assessing the district court's finding that CYFD proved by clear and convincing evidence that reasonable efforts were made to reunify Father with Children, we consider the totality of the circumstances underlying the district court's decision. *See State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814. This review requires that we take care to "avoid reweighing individual factors in isolation." *State v. Martinez*, 2018-NMSC-007, ¶ 12, 410 P.3d 186. "Efforts to assist a parent may include individual, group, and family counseling, substance abuse treatment, mental health services, transportation, child care, and other therapeutic services." *Keon H.*, 2018-NMSC-033, ¶ 41 (internal quotation marks and citation omitted). "What constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Id.* (alteration, internal quotation marks, and citation omitted).

**{26}** Father likens this case to *Joseph M.*, wherein the father was never made aware by CYFD that his inability to create distance between himself and the mother may act as grounds for terminating his parental rights since his relationship with the mother constituted an inability to give his children appropriate care. *See* 2006-NMCA-029, ¶ 20. Because of this, we held that there was insufficient evidence of reasonable efforts made by CYFD to aid the father in severing his relationship with the mother so he could properly parent his children. *Id.* ¶ 22. Here, Father maintains that, like the father in *Joseph M.*, he was never told that he must sever ties with Grandmother or his parental rights may be terminated. *See id.* ¶ 20. This argument is unsupported by the record.

**{27}**   Father was aware that Children's primary aversion to returning to his care was his relationship with Grandmother. Over the course of his case, CYFD informed Father that Grandmother was detrimental to the progress on his case plan. Father was subject to domestic violence from Grandmother, which was witnessed by Children, and he was receiving treatment for this domestic violence as part of his CYFD case plan. Father's counselor also discussed Father's harmful dependence on Grandmother with him, and his therapist discussed the need for him to stop residing with Grandmother. Father's permanency planner had to change the location of her meetings with Father due to repeated disruptions by Grandmother despite her removal from the case and previous requests relayed to Father that she not attend. Moreover, unlike the father in *Joseph M.*, who showed progress in his services, Father continually made "no progress" on his case plan, despite receiving services from a number of counselors and therapists, and CYFD actively meeting with him to discuss his progress in these services and the status of his case, and he was prohibited from continuing a number of those services or otherwise discontinued participation on his own. *See id.* ¶ 11.

**{28}**   For these reasons, we are unpersuaded by Father's argument. The burden of making efforts to reunify families does not fall on CYFD alone, but is shouldered by parents as well. *Keon H.*, 2018-NMSC-033, ¶ 48. The record reveals that Father was aware that his relationship with Grandmother could hinder his reunification efforts, yet Father's progress in his case plan remained unchanged. Based on this, and because "our job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law[,]" we are satisfied that clear and convincing evidence supports the district court's finding that CYFD made reasonable efforts to reunify Father with Children. *Patricia H.*, 2002-NMCA-061, ¶ 28.

## II.   Father Has Not Demonstrated That He Received Ineffective Assistance of Counsel

**{29}**   "The right to effective assistance of counsel extends to parents in termination cases." *State ex rel. Children, Youth & Families Dep't v. William M.*, 2007-NMCA-055, ¶ 53, 141 N.M. 765, 161 P.3d 262; *see* NMSA 1978, § 32A-5-16(E) (2009) ("The court shall, upon request, appoint counsel for an indigent parent who is unable to obtain counsel, or if, in the court's discretion, appointment of counsel for an indigent parent is required in the interest of justice."). "In reviewing a claim of ineffective assistance of counsel, we look at the proceedings as a whole." *William M.*, 2007-NMCA-055, ¶ 53 (internal quotation marks and citation omitted). "Litigants alleging ineffective assistance of counsel have the burden of establishing the claim and are required to show not only that trial counsel was ineffective, but that trial counsel's inadequacies prejudiced them." *Id.* (internal quotation marks and citation omitted).

**{30}**   At times, we have employed the same standard to assess ineffective assistance of counsel claims in termination of parental rights proceedings as we do in criminal cases. *See, e.g.*, *In re Termination of Parental Rights of James W.H.*, 1993-NMCA-028, ¶¶ 9-10, 115 N.M. 256, 849 P.2d 1079. Under this standard, we remand the case to the

district court for an evidentiary hearing if the record before us establishes a prima facie case of counsel's ineffectiveness. *State ex rel. Children, Youth & Families Dep't v. David F., Sr.*, 1996-NMCA-018, ¶ 20, 121 N.M. 341, 911 P.2d 235. This is established if: "(1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *Id.* In other cases, we have employed a standard that necessitates remand "only where the complaining parent raises a substantial question concerning issues other than those adjudicated at the termination proceeding." *Id.* ¶ 21 (internal quotation marks and citation omitted); *see, e.g.*, *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 26, 126 N.M. 664, 974 P.2d 158.

**{31}**    Father does not articulate the standard he wishes us to employ,[2] but requests that we remand this case for an evidentiary hearing on his representation by counsel below. Father argues that he received ineffective assistance because "he was not communicating with counsel throughout the proceedings" which prejudiced his understanding of the steps he needed to take in order to avoid the termination of his parental rights. He attributes this to not being consistently represented by the same attorney, and spending only short periods of time with each attorney that represented him. As we explain, employing either standard outlined above, we conclude that Father has failed to demonstrate that he received ineffective assistance of counsel.

**{32}**    The record before us reveals that Father had the opportunity to consult with his court-appointed counsel regarding the proceedings. On the occasions where Father was represented by substitute counsel, these attorneys indicated that they were prepared to proceed, and otherwise requested continuances in the instances where they believed Father's court-appointed counsel should be present. And, on at least one occasion, Father agreed to proceed with substitute counsel. Finally, Father's court-appointed attorneys actively participated in the proceedings, including offering objections to CYFD's case.

**{33}**    To the degree that Father maintains that his private counsel was ineffective due to this same alleged lack of communication, we remain unpersuaded. Father's private counsel informed the district court that he spent time with Father "over . . . several months" before Father's termination of parental rights trial. And, as is true of Father's court-appointed counsel, Father's private counsel offered objections to CYFD's case throughout the course of the proceedings.

---

2Father appears to invite us to settle the question of which standard for ineffective assistance of counsel claims applies in termination of parental rights proceedings. However, he offers no indication or analysis regarding which standard he believes to be correct. We therefore decline to reach the merits of this question. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop arguments itself, effectively performing the parties' work for them. . . . It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments.").

**{34}** Insofar as Father's argument is premised on the assertion that, presumably in reference to his court-appointed counsel, "[a]n attorney's goal should be to *avoid* a [termination of parental rights trial]" and that for this reason he received ineffective assistance, this too is unsupported by the record. Indeed, Father's court-appointed counsel explicitly voiced his desire to avoid the termination of Father's parental rights. To the extent that Father's argument is premised on not receiving legal counsel to "review his legal alternatives . . ., *and explain the consequences*," of proceeding to a termination of parental rights trial, Father has failed to adequately brief this issue, point to evidence in the record, and provide relevant authority. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (noting that this Court may decline to address an argument due to inadequate briefing, the party's failure to point to relevant facts in the record, and the absence of authority). Therefore, we decline to address this issue further.

**{35}** For these reasons, we are satisfied that Father's counsel below acted reasonably, and Father has failed to show how counsel's conduct prejudiced him. Moreover, Father has not pointed us to a substantial question that was not resolved during the termination proceedings. We therefore conclude that Father has failed to demonstrate that he received ineffective assistance of counsel, and need not remand for an evidentiary hearing on this issue.[3]

### III.    Father Has Not Demonstrated That His Due Process Rights Were Violated

**{36}** Father relies on the same assertions as his ineffective assistance of counsel claim in requesting that we remand this case for an evidentiary hearing because he claims his procedural due process rights were violated in the proceedings below.[4] At the outset, and as discussed above, we note that Father has failed to demonstrate that he received ineffective assistance of counsel. *See State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 48, 136 N.M. 53, 94 P.3d 796 ("Due process encompasses a parent's Sixth Amendment right to effective assistance of counsel at abuse and neglect proceedings."); *William M.*, 2007-NMCA-055, ¶ 53 (outlining the burden of litigants claiming ineffective assistance of counsel to demonstrate "not only that trial counsel was ineffective, but that trial counsel's inadequacies prejudiced them" (internal quotation marks and citation omitted)). Regardless, "whether an individual was afforded due process is question of law that we review de novo." *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 17, 133 N.M. 827, 70 P.3d 1266.

---

3Father notes that a second amended motion to reconsider the termination of his parental rights, premised on ineffective assistance of counsel, is presently pending before the district court. Our holding herein should not be construed to prejudice Father's pending motion.

4Our understanding of Father's briefing in this regard is that Father's procedural due process argument extends only to the counsel he received through his court-appointed attorneys, and does not concern the private counsel he retained. We limit our discussion accordingly.

**{37}** In evaluating alleged procedural due process violations, New Mexico courts utilize the balancing test articulated by the United States Supreme Court in *Matthews v. Eldridge*, 424 U.S. 319 (1976), remaining cognizant that "[t]he amount of process due depends on the particular circumstances of each case because procedural due process is a flexible right." *In re Pamela A.G.*, 2006-NMSC-019, ¶¶ 12-13. "This balancing test requires the weighing of three factors. One, the private interest at stake. Two, the government's interest. Three, whether the procedures used increased the risk of erroneous deprivation of the private interest." *Id.* ¶ 13.

**{38}** With regard to the first *Matthews* factor, we recognize that Father's parental rights are constitutionally protected. *See In re Termination of Parental Rights of Ronald A.*, 1990-NMSC-071, ¶ 3, 110 N.M. 454, 797 P.2d 243; *see also State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.*, 1999-NMCA-035, ¶ 10, 126 N.M. 670, 974 P.2d 164 (recognizing that parents have a "fundamental liberty interest . . . in the care, custody, and management of their child[ren]" (internal quotation marks and citation omitted)). With regard to the second *Matthews* factor, we recognize that "[i]t is well established in New Mexico that parents do not have absolute rights in their children; rather, parental rights are secondary to the best interests and welfare of the children." *In re Adoption of Francisco A.*, 1993-NMCA-144, ¶ 20, 116 N.M. 708, 866 P.2d 1175. Additionally, "parents' right to raise their children is not beyond regulation in the public interest." *Ridenour v. Ridenour*, 1995-NMCA-072, ¶ 8, 120 N.M. 352, 901 P.2d 770. These first two factors carry equal weight. *See Pamela A.G.*, 2006-NMSC-019, ¶ 13. Thus, we center our inquiry on the third *Matthews* factor, and ask "whether additional procedural safeguards would eliminate or lower" the risk of erroneous deprivation of Father's parental rights. *Id.* Employing this framework, our conclusion will not turn on whether Father can show that his parental rights would not have been terminated had these additional safeguards been in place; rather, he "need only demonstrate that there is a reasonable likelihood that the outcome might have been different." *State ex rel. Children, Youth & Families Dep't v. Kathleen D.C.*, 2007-NMSC-018, ¶ 14, 141 N.M. 535, 157 P.3d 714 (internal quotation marks and citation omitted).

**{39}** Father contends that the outcome of the termination of parental rights trial may have been different if he had "received consistent counseling from his appointed counsel, rather than brief greetings from diverse attorneys" during the course of the proceedings below. As we have already outlined, Father's contentions regarding his communication with counsel are unsupported by the record. Father did indeed have the opportunity to consult with his court-appointed counsel. When attorneys substituted for Father's court-appointed counsel, they indicated that they were prepared to proceed, and requested continuances in the instances when they did not feel comfortable proceeding in the absence of Father's court-appointed counsel. And, on at least one occasion, Father agreed to proceed with substitute counsel. We also note that some interruptions in the course of Father's representation by court-appointed counsel are attributable to him alone, as on at least two occasions, he indicated that he wished to terminate his relationship with court-appointed attorneys, yet did not do so until months later.

**{40}** Finally, Father's contentions that he (1) "was denied notice of the case against him" because lack of communication with court-appointed counsel deprived him of the opportunity to assess the evidence CYFD would ultimately use in seeking to terminate his parental rights; and (2) was unable to "change the course of events leading to [the termination of parental rights trial]" are equally unavailing. Father was present at the hearings leading up to the trial where Father's progress in the services he was offered was discussed, and Father's court-appointed counsel discussed CYFD's judicial review report with him. Additionally, as outlined fully above, Father was made aware by CYFD that his relationship with Grandmother could inhibit his ability to reunify with Children, and his counselor and therapist discussed the harmful components of this relationship with him. Thus, Father did not require the advice of counsel on this subject.

**{41}** For these reasons, Father has failed to demonstrate that his communication with court-appointed counsel was deficient or that heightened communication may reasonably have resulted in a different outcome. As such, we cannot conclude that Father's due process rights were offended, and thus perceive no reason to remand for an evidentiary hearing on the same.

**CONCLUSION**

**{42}** In light of the foregoing, we affirm the termination of Father's parental rights to Children.

**{43}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**ZACHARY A. IVES, Judge**